*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0204p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MAX ARNOLD & SONS, LLC,

     *Plaintiff-Appellee,*

  *v.*

              No. 05-5893

W.L. HAILEY & COMPANY, INC.,

     *Defendant-Appellant.*

> Appeal from the United States District Court
> for the Middle District of Tennessee at Nashville.
> No. 04-00124—Thomas A. Wiseman, Jr., District Judge.

Argued: March 14, 2006

Decided and Filed: June 22, 2006

Before: MARTIN, SILER, and CLAY, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Robert S. Patterson, BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, for Appellant. Todd E. Panther, TUNE, ENTREKIN & WHITE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Robert S. Patterson, Eric W. Smith, BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, for Appellant. Todd E. Panther, Shawn R. Henry, TUNE, ENTREKIN & WHITE, Nashville, Tennessee, for Appellee.

———————————

**OPINION**

———————————

  CLAY, Circuit Judge. Defendant W.L. Hailey & Co., Inc. appeals the March 9, 2005 order of the United States District Court for the Middle District of Tennessee denying Defendant's motion for judgment on the pleadings and granting Plaintiff Max Arnold & Sons, LLC's motion for summary judgment on Plaintiff's claim of breach of contract. For the following reasons, we **REVERSE** the district court's grant of Plaintiff's motion for summary judgment, **AFFIRM** the district court's partial grant of Defendant's motion for summary judgment and partial denial of the same motion,[1] and **REMAND** the case for further proceedings.

————————

[1] While the district court ruled on Defendant's motion for judgment on the pleadings, as explained, *infra*, this Court treats the district court's decision as one on a motion for summary judgment.

## I. BACKGROUND

### A.     PROCEDURAL HISTORY

On February 17, 2004, Plaintiff filed a complaint against Defendant in the United States District Court for the Middle District of Tennessee, alleging subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Plaintiff alleged that Defendant breached a guaranty agreement between Plaintiff and Defendant.

On April 2, 2004, Defendant filed an answer.  On June 4, 2004, Defendant filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

On June 28, 2004, Plaintiff filed a response to Defendant's motion for judgment on the pleadings, and Plaintiff filed a motion for summary judgment.  Plaintiff submitted two affidavits with its motion: an affidavit from an officer of Plaintiff, and an affidavit from a former officer of Defendant.  Plaintiff also submitted with its motion a "Statement of Undisputed Material Facts." On July 28, 2004, Defendant filed a response to Plaintiff's "Statement of Undisputed Material Facts."  Plaintiff submitted one affidavit with its response, from an officer of a subsidiary of Defendant.

On March 8, 2005, the district court denied Defendant's motion for judgment on the pleadings and granted Plaintiff's motion for summary judgment.  On March 21, 2005, Defendant filed a motion to alter or amend the district court judgment pursuant to Federal Rule of Civil Procedure 59(e).  The district court denied this motion.  On May 20, 2005, Defendant timely filed a notice of appeal.

### B.     FACTS

Plaintiff is a Kentucky corporation that sells petroleum products.  Defendant is a Tennessee corporation that specializes in the construction of "large underground utility and treatment plant projects."  (J.A. at 16.)  On June 30, 2000, Defendant acquired A.J. Hall Oil Company, Inc. ("A.J. Hall"), a Tennessee corporation that sells petroleum products in middle Tennessee.

Plaintiff held a Chevron Lubrication Marketer Agreement for an eight-county region in middle Tennessee.  In 2001, A.J. Hall was looking to acquire a small lubricants company with an existing customer base to increase its lubricants business.  A.J. Hall took particular interest in Plaintiff's middle Tennessee operations.  In 2001, Rusty McDonald ("McDonald"), the president of A.J. Hall, contacted Phil Russo ("Russo"), vice president of sales and marketing of Plaintiff, to discuss a possible purchase of Plaintiff's middle Tennessee operations.  During negotiations, McDonald, Russo, and James Bryant ("Bryant"), corporate secretary and treasurer of Defendant, executed a memorandum of understanding on September 10, 2001.  The memorandum expressed an understanding that Plaintiff would sell its middle Tennessee operation to A.J. Hall, with the primary consequence being A.J. Hall's ability to sell Chevron lubricants in that area.

Chevron, however, was unwilling to completely switch its business from Plaintiff to A.J. Hall.  Chevron had a long history of successful business dealings with Plaintiff, but it had no experience in dealing with A.J. Hall.  Chevron wanted some assurance of consistent performance in the transition from Plaintiff to A.J. Hall, and Chevron insisted that Plaintiff stay on in a transitional role.  As a result, Plaintiff and A.J. Hall agreed to form a new company, W.L. Hailey Oil Services, LLC ("Hailey Oil Services").  Plaintiff would have a 30% membership interest in Hailey Oil Services, and A.J. Hall would have a 70% interest in the company.

On November 27, 2001, Plaintiff and A.J. Hall executed an operating agreement for Hailey Oil Services.  In relevant part, the agreement stated:

1.1     *Definitions*.

(c)     "Cash Flow" of the Company shall mean the Company's taxable income for federal tax purposes, increased by (i) amortization, depreciation and other noncash charges taken into account in computing taxable income, (ii) any nontaxable income or proceeds from any refinancing of the Company's indebtedness (other than capital contributions) and (iii) the net proceeds from the sale of any of the Company's assets, and reduced by (iv) principal payments on Company indebtedness, (v) any other cash expenditures which have not been deducted in determining the taxable income of the Company and (vi) any amount that the Board of Governors determines to be reasonably required to maintain sufficient working capital and a reasonable reserve for operating expenses. The Cash Flow of the Company shall be determined separately for each fiscal year and not cumulatively.

. . .

6.1     *Distribution of Cash Flow*.     Subject to the provisions of the [Tennessee Limited Liability Company] Act, Cash Flow generated from Company operations shall be distributed to the Members within 30 days of the end of each calendar quarter in accordance with the Percentage Interests of the Members, except that, to the extent Max Arnold's share of Cash Flow for any of the first four calendar quarters of operation is less than $33,750, A.J. Hall's share of Cash Flow shall be reduced and Max Arnold shall receive Cash Flow equal to $33,750. To the extent that Cash Flow for any of the first four calendar quarters of operation is less than $33,750, Max Arnold's share of Cash Flow for the following calendar quarter(s) shall be increased until such time that Max Arnold's share of Cash Flow for each of the first four calendar quarters of operation is equal to $33,750 per quarter.

. . .

14.5     *Net Equity*.

(c)     . . . Notwithstanding anything to the contrary herein, the Net Equity of Max Arnold's interest shall be equal to One Hundred Thirty-Five Thousand Dollars ($135,000) less any and all distributions made to Max Arnold pursuant to Section 6.1.

. . .

15.1     *Purchase*.     A.J. Hall shall purchase all of the Membership Interest of Max Arnold and Max Arnold shall sell all of its Membership Interest on the date which is twelve (12) months from the date of this Agreement if the Company shall hold a contract from Chevron enabling it to market, sell and distribute Chevron lubricant products in the Middle Tennessee Area on such date.

15.2     *Purchase Price*.     In exchange for the Membership Interest of Max Arnold, A.J. Hall shall pay to Max Arnold an amount equal to One Hundred Thirty-Five Thousand Dollars ($135,000) less all distributions from the Company to Max Arnold pursuant to Section 6.1.

(J.A. at 21-22, 29, 48.) In short, the operating agreement created two separate obligations to Plaintiff. Under Section 6.1, Hailey Oil Services was required to pay cash flow distributions to Plaintiff. Under Sections 15.1 and 15.2, A.J. Hall was required to pay Plaintiff $135,000, less any cash flow distributions, one year after the execution of the operating agreement, *i.e.*, November 27, 2002, if Hailey Oil Services had a lubricants contract with Chevron at that time.

On the same day, Plaintiff and Defendant entered into a guaranty agreement. In relevant part, the guaranty agreement stated:

> NOW, THEREFORE, in consideration of the mutual promises and benefits to be derived by parties hereto from the operation of the business known as W.L. Hailey Oil Services, LLC, W.L. Hailey Company, Inc. hereby guarantees the prompt and full payment of any financial obligation which is due and payable to Max Arnold & Sons, LLC pursuant to that certain Operating Agreement dated the 27th day of November, 2001, of W.L. Hailey Oil Services, LLC.
>
> By the execution of this Agreement, W.L. Hailey Company, Inc. specifically guarantees the payment of the distributions of cash flow to Max Arnold & Sons, LLC, as set forth in Section 6.1 of said Operating Agreement; . . . and the purchase of the membership interest of Max Arnold & Sons, LLC by A.J. Hall as set forth in Section 15.2 of the Operating Agreement.

(J.A. at 54-55.) On the same day, Plaintiff and Hailey Oil Services entered into a non-compete agreement.

On December 1, 2001, Chevron executed a marketing distribution agreement with Hailey Oil Services. The relationship between the parties seemed to be running smoothly. On March 1, 2002, Hailey Oil Services paid Plaintiff $35,425.70, which included $33,750 for the first calendar quarter cash flow distribution check under Section 6.1 of the operating agreement, as well as additional money for equipment and inventory.

After the initial payment, Hailey Oil Services failed to pay Plaintiff cash flow distributions; however, there is no evidence in the record that Hailey Oil Services generated a positive cash flow in the remaining three calendar quarters. Moreover, on or about April 25, 2002, Chevron notified Hailey Oil Services of its intent to cancel the lubricants distribution agreement with Hailey Oil Services. The cancellation became effective on June 23, 2002. Bryant, now a former officer of Defendant, stated in an affidavit that A.J. Hall, after receiving Plaintiff's customer lists pursuant to the operating agreement for Hailey Oil Services, began selling "off-market brands" to many of Plaintiff's former customers who had been purchasing Chevron products.

Plaintiff demanded payment under the operating agreement from both Hailey Oil Services and A.J. Hall, and both refused to pay. Plaintiff then demanded payment under the guaranty agreement from Defendant, and Defendant refused to pay. Plaintiff followed with the instant suit.

## II. DISCUSSION

## A.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### 1.    Standard of Review

This Court reviews the district court's decision on a motion for summary judgment *de novo*. *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005) (citation omitted). The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Court must view the facts and all of the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### 2.     Analysis

The district court erred in granting Plaintiff's motion for summary judgment. The operating agreement does not create an obligation of absolute payment from Hailey Oil Services to Plaintiff under Section 6.1; instead, it only creates an obligation to pay Plaintiff cash flow distributions. Because Plaintiff has failed to demonstrate that Hailey Oil Services had a positive cash flow for the remaining three calendar quarters, and because Plaintiff has failed to demonstrate that Hailey Oil Services had a positive cash flow in any subsequent calendar quarters, Plaintiff has failed to demonstrate that Hailey Services breached Section 6.1 of the operating agreement. Therefore, Plaintiff has failed to meet its burden on summary judgment in demonstrating that Defendant should be held liable under the guaranty agreement.

### a.     Tennessee Law

A guaranty is "[a] promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance." Black's Law Dictionary 712 (7th ed. 1999). Thus, the basic definition of "guaranty" contemplates a failure by the primary party, a failure for which the guarantor is then responsible. Both Plaintiff and Defendant agree that Tennessee law governs the instant case.[2] Under Tennessee law,

> guaranties, by their very nature, are conditional promises to pay because guarantors promise to pay only on the condition that the principal debtor fails to pay. Likewise, guaranties, even ones containing a limitation on the guarantor's liability, do not involve a sum certain because the amount of the guarantor's liability cannot be determined solely from the instrument itself without reference to an outside source. Finally, a guaranty is not payable at a definite time or on demand since it is payable only when the principal debtor defaults.

*Guarantor Partners v. Huff*, 830 S.W.2d 73, 76 (Tenn. Ct. App. 1992). Thus, the primary party must default before the guarantor may be held liable.

### b.     Application to This Case

The district court erred in finding that there was no genuine issue of material fact that Hailey Oil Services failed to fulfill its obligations under the operating agreement, rendering Defendant liable to Plaintiff under the guaranty agreement. We agree with the district court that A.J. Hall was not obligated to purchase Plaintiff's membership interest in Hailey Oil Services at the lapse of one year from the execution of the operating agreement, *i.e.*, November 27, 2002, under Sections 15.1 and 15.2. The condition precedent to this purchase, the existence of a contract with Chevron at that point in time, had not been met.[3] We disagree, however, with the district court's holding that Hailey Oil Services was obligated to pay Plaintiff under Section 6.1. That Section states:

---

[2] We are unclear as to how the parties arrive at this conclusion. The operating agreement states that Tennessee law governs that agreement and the rights of the members of that agreement; however, the guaranty agreement does not contain a choice of law provision. Moreover, Defendant is not a member of the operating agreement. Nevertheless, the parties' conclusion is correct. "It is well-established that federal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (citation omitted). Under Tennessee law, if there is no choice of law provision in the agreement, then Tennessee law applies "to transactions bearing an appropriate relation to this state." Tenn. Code Ann. §47-1-105(1). The transactions at the heart of the guaranty agreement, *i.e.*, the operation of Hailey Oil Services, all took place in Tennessee. Therefore, Tennessee law governs the guaranty agreement.

[3] Of course, whether A.J. Hall or Hailey Oil Services exhibited bad faith in its failure to keep the Chevron contract is an open question.

> *Distribution of Cash Flow*.    Subject to the provisions of the Act, Cash Flow generated from Company operations shall be distributed to the Members within 30 days of the end of each calendar quarter in accordance with the Percentage Interests of the Members, except that, to the extent Max Arnold's share of Cash Flow for any of the first four calendar quarters of operation is less than $33,750, A.J. Hall's share of Cash Flow shall be reduced and Max Arnold shall receive Cash Flow equal to $33,750.  To the extent that Cash Flow for any of the first four calendar quarters of operation is less than $33,750, Max Arnold's share of Cash Flow for the following calendar quarter(s) shall be increased until such time that Max Arnold's share of Cash Flow for each of the first four calendar quarters of operation is equal to $33,750 per quarter.

The district court interpreted this Section to mean that Hailey Oil Services was obligated to pay Plaintiff $33,500 per calendar quarter for the first year:

> Section 6.1, in unambiguous language, states that Plaintiff shall receive quarterly payments in Cash Flow distribution totaling $135,000.  There is no condition precedent to these payments.  In fact, the contract states that the quarterly payments to Plaintiff shall take priority over any cash flow payments to A.J. Hall.  These payments are due to Plaintiff under the express terms of the contract.  Thus, under the Operating Agreement, there is no question that Plaintiff is owed Cash Flow payments of $135,000.

(J.A. at 61.)

We agree with the district court that "there is no question that Plaintiff is owed Cash Flow payments of $135,000."  There is a logical disconnect, however, between this statement and the district court's order awarding Plaintiff judgment in the amount of $99,574.30, which is $135,000 less the first calendar quarter distribution made by Hailey Oil Services.[4]  Under Section 6.1, Hailey Oil Services is obligated to make cash flow distributions to Plaintiff.  A condition precedent to these distributions is that Hailey Oil Services actually must have positive cash flow to distribute.  In other words, Section 6.1 does not guarantee an absolute payment of $33,750 per calendar quarter for the first four quarters; it only guarantees that Plaintiff will receive cash flow payments of $33,750 per calendar quarter for the first four quarters if there is sufficient cash flow, or, in the case that Plaintiff receives less than that amount due to insufficient cash flow, Plaintiff has priority in receiving cash flow distributions in subsequent quarters.  The only way in which Plaintiff can demonstrate that Hailey Oil Services failed in its obligations under Section 6.1 is if Hailey Oil Services failed to make cash flow payments as required under that Section.

Section 6.1 contemplates three levels of cash flow.  If Hailey Oil Services' quarterly cash flow was greater than or equal to $112,500,[5] then Plaintiff would take a simple 30% distribution of that cash flow and A.J. Hall would take 70%.  If the quarterly cash flow was between $33,750 and $112,500, then Plaintiff would take $33,750 and A.J. Hall would take the remainder.  If the quarterly cash flow was less than $33,750, then Plaintiff would take all of it, and the difference between $33,750 and the actual amount would be paid from the subsequent quarter.  Thus, Plaintiff would have priority payment in the situation where it was paid less than $33,750 for a calendar quarter.

---

[4]This amount is also incorrect, because while Hailey Oil Services actually paid out $35,425.70, only $33,750 was paid pursuant to Section 6.1; the remainder was for inventory and equipment.

[5]$33,750 divided by Plaintiff's 30% membership interest.

In this case, Hailey Oil Services made the following cash flow distributions to Plaintiff for the first four calendar quarters: $33,750,[6] $0, $0, $0.  This distribution would be correct if the cash flow of Hailey Oil Services was between $33,750 and $112,500 for the first quarter, and $0 or negative for the remaining three quarters, as well as $0 or negative for any subsequent quarters.  In order to show a breach of Section 6.1, Plaintiff must demonstrate that in fact Hailey Oil Services had cash flow greater than these amounts in these quarters.  Plaintiff has not produced sufficient evidence to demonstrate that there is no genuine issue of material fact that Hailey Oil Services generated such cash flow.  Plaintiff argues, "The Guaranty Agreement executed by W.L. Hailey is unconditional and specifically guarantees the money owed to Max Arnold under Section 6.1."  (Pl. Br. 18.)  While we concede that this statement is correct, Plaintiff fails to adequately prove on summary judgment that in fact Plaintiff is owed any money under Section 6.1.

We emphasize that the structure of Section 6.1 did not guarantee that Plaintiff would absolutely receive $33,750 per calendar quarter for the first four calendar quarters.  The Section guaranteed that Plaintiff would receive $33,750 per calendar quarter if adequate cash flow was available.  If adequate cash flow was not available, the Section unambiguously gave Plaintiff only one source of relief: Hailey Oil Services cash flow in subsequent quarters.  Absent a factual showing that Hailey Oil Services wrongfully withheld cash flow from Plaintiff,[7] Plaintiff fails to prove that Hailey Oil Services breached its obligations under Section 6.1.  Because Plaintiff fails to make such a showing to the threshold of proving that there is no genuine issue of material fact, Plaintiff has not adequately proved a breach on the part of Hailey Oil Services.  Because Plaintiff fails to adequately prove such a breach, Plaintiff also fails to adequately prove that Defendant breached the guaranty agreement.  Plaintiff fails to meet its burden under the summary judgment standard; therefore, the district court's decision granting Plaintiff's motion for summary judgment was error.

## B.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### 1.     Standard of Review

Defendant originally filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  That rule, however, states,

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c).  In this case, matters outside the pleadings were presented to and not excluded by the district court; specifically, Plaintiff presented two affidavits and a "Statement of Undisputed Material Facts," while Defendant presented one affidavit.

The question then becomes whether this evidence was introduced "on a motion for judgment on the pleadings," or on Plaintiff's summary judgment motion.  Plaintiff did not respond to Defendant's motion for judgment on the pleadings with a simple response; instead, Plaintiff filed a motion for summary judgment.  Plaintiff's memorandum in support of the motion was entitled,

---

[6] As stated in note 5, *supra*, while Hailey Oil Services actually paid out $35,425.70, only $33,750 was paid pursuant to Section 6.1; the remainder was for inventory and equipment.

[7] For example, if Plaintiff proved Hailey Oil Services had cash flow of $20,000 in the second calendar quarter but paid Plaintiff $0, Plaintiff would be entitled to that $20,000, as well as priority in the next quarter to offset the shortage of $13,750.

"Memorandum of Law by [Plaintiff] in Support of its Motion for Summary Judgment and in Opposition to [Defendant's] Motion for Judgment on the Pleadings." (J.A. at 137.) In the memorandum, Plaintiff referred to the affidavit of Bryant in the parol evidence context; Plaintiff stated that to the extent the district court found the guaranty agreement to be ambiguous, the district court could rely on the parol evidence of Bryant's affidavit. Plaintiff's reference was made under the subheading, in relevant part, "The Affidavit of James Bryant Establishes that the Defendant's Motion for Judgment on the Pleadings Should be Denied and that [Plaintiff's] Motion for Summary Judgment Should be Granted." We therefore find that Plaintiff in part submitted the affidavit in connection with Defendant's motion for judgment on the pleadings. Likewise, Plaintiff submitted the affidavit of Russo in part to refute a contention made by Defendant in its memorandum in support of its motion for judgment on the pleadings. As for Plaintiff's "Statement of Undisputed Material Facts," we are uncertain whether Plaintiff submitted this statement in connection with Defendant's motion for judgment on the pleadings, inasmuch as Plaintiff does not refer to the statement in its memorandum. Defendant submitted an affidavit in response to Plaintiff's motion for summary judgment, not in its reply to Plaintiff's response to the motion for judgment on the pleadings.

At a minimum, Plaintiff presented to the district court two affidavits on Defendant's motion for judgment on the pleadings, and the district court did not exclude these affidavits. The question then becomes whether, under these facts, the district court should have converted Defendant's 12(c) motion to a motion for summary judgment. The courts have been imprecise and inconsistent as to what action of the district court triggers the obligation to convert a motion for judgment on the pleadings to a motion for summary judgment. Some courts have held that a court may accept and consider matters outside the pleadings for a motion for judgment on the pleadings, so long as the court does not "rely" on those matters in its decision on the motion. *See, e.g.*, *Alexander v. Oklahoma*, 382 F.3d 1206, 1213-14 (10th Cir. 2004) (analyzing the requirements under Rule 12(b)(6), which has language identical to that in Rule 12(c)); *Homart Dev. Co. v. Sigman*, 868 F.2d 1556, 1561-62 (11th Cir. 1989). Other courts have held that if a court accepts and "considers" those matters outside the pleadings, the motion for judgment on the pleadings should be converted to a motion for summary judgment. *See, e.g.*, *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 n.5 (7th Cir. 1998) (noting that while the district court accepted various documents outside of the pleadings, it did not consider those documents). Still other courts have found that the mere acceptance of those outside materials is sufficient to trigger the conversion of a motion for judgment on the pleadings to one for summary judgment. *See, e.g.*, *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 835-36 (7th Cir. 1994).

In our view, Rule 12(c) requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence. We therefore agree with the third line of cases, as exemplified by *Dempsey*. This Court has found that the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a motion for summary judgment. *See Moody v. United States*, 774 F.2d 150, 155 n.5 (6th Cir. 1985) ("Although the government's motion in *Bawgus* was for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), it is clear that matters outside the pleadings were presented; we, therefore, consider the court's decision as if entered on a motion for summary judgment, Fed. R. Civ. P. 56."). Although we have found that consideration or reliance on matters outside the pleadings is sufficient to trigger conversion under Rule 12(c), *see, e.g.*, *Thompson v. The Budd Co.*, 199 F.3d 799, 804 (6th Cir. 1999) (consideration); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997) (reliance), we have never held that consideration or reliance was required under Rule 12(c) for conversion to a motion for summary judgment. We therefore disagree with those cases that require the district court to further consider or rely upon these outside matters before the obligation to convert is triggered; the plain language of Rule 12(c) does not require these additional steps; it only requires the presentation of matters outside the pleadings and the district court's failure to

exclude such matters. *See also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed. 2004) ("[A] district court could consider evidence outside the pleadings on a motion under Rule 12(c), and, *upon acceptance* of that material, would regard the motion as one for summary judgment . . . . The district court remains free *to refuse to accept* materials outside the pleadings in order to keep the motion under Rule 12(c) . . . ." (emphasis supplied).).

Because Plaintiff presented matters outside of the pleadings with respect to Defendant's Rule 12(c) motion, and because the district court did not exclude these matters, the district court should have converted the Rule 12(c) motion to a motion for summary judgment. This Court therefore construes the district court's denial of Defendant's motion for judgment on the pleadings as a denial of Defendant's motion for summary judgment. *See United Bhd. of Carpenters and Joiners, Dresden Local No. 267 v. Ohio Carpenters Health and Welfare Fund*, 926 F.2d 550, 558 (6th Cir. 1991) ("As an appellate court, we are not bound to adhere to the label attached to the trial court's disposition of the case and may treat it as a summary judgment." (citation omitted).) *Cf. Downing v. Kunzig*, 454 F.2d 1230, 1231 n.2 (6th Cir. 1972) (construing the district court's grant of a Rule 12(b)(6) motion as a grant of summary judgment, based on language identical to that in Rule 12(c)).

Because the district court effectively converted Defendant's motion for judgment on the pleadings to a motion for summary judgment, it should have given both of the parties notice of such conversion and provided a "reasonable opportunity to present all material made pertinent to such a motion." *See* Fed. R. Civ. P. 12(c); *Harrington v. Painter*, 92 Fed. App'x 126, 129 (6th Cir. Dec. 18, 2003) (unpublished decision) (reversing district court's judgment for failure to provide notice of conversion under Fed. R. Civ. P. 12(b)(6)). The district court's failure to give such notice and opportunity to respond is not reversible error, however, where all parties in fact had a sufficient opportunity to present pertinent materials. *See Lisle v. Metro. Gov't of Nashville and Davidson County*, 73 Fed. App'x. 782, 790 (6th Cir. July 9, 2003) (unpublished decision). With regard to Defendant's Rule 12(c) motion in this case, both parties appear to have had adequate notice of the conversion and a sufficient opportunity to respond, given their factual submissions (and neither party has argued otherwise on appeal). Thus, although the district court should have officially notified the parties of the conversion and their ability to supplement the record, its failure to do so is not a basis for reversal here.

This Court reviews the district court's decision on a motion for summary judgment *de novo*. *Turner*, 412 F.3d at 637 (citation omitted). The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The Court must view the facts and all of the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

### 2.    Analysis

#### a.    Subject Matter Jurisdiction

This Court has an independent obligation to determine whether subject matter jurisdiction exists in a given case. *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 435 (6th Cir. 2006) (citation omitted). Under 28 U.S.C. § 1291, this Court has jurisdiction over the final decisions of a district court.

Here, the district court made two decisions: it denied Defendant's motion for summary judgment, and it granted Plaintiff's motion for summary judgment. Arguably, this Court only has

jurisdiction to review the district court's grant of Plaintiff's motion, as that was a final decision, whereas the denial of Defendant's motion for summary judgment was not a final decision.

While this logic is technically consistent with 28 U.S.C. § 1291, a more flexible approach may be appropriate in the context of cross motions for summary judgment. The Supreme Court has stated:

> While the application of § 1291 in most cases is plain enough, determining the finality of a particular judicial order may pose a close question. No verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future. We know, of course, that § 1291 does not limit appellate review to 'those final judgments which terminate an action . . .,' *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S., at 545 . . ., but rather that the requirement of finality is to be given a 'practical rather than a technical construction.' *Id.*, at 546. . . . The inquiry requires some evaluation of the competing considerations underlying all questions of finality–'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 . . . (1950) (footnote omitted).

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170-71 (1974). As a practical matter, if both a grant of a party's motion for summary judgment and a denial of another party's motion for summary judgment are before this Court, and the Court can adequately determine whether the denial was proper, then this Court should conduct an analysis of the denial. A decision otherwise would be inconvenient, a waste of judicial resources, and would create piecemeal and unduly splintered litigation, especially if there is an overlap between the cross motions for summary judgment. Moreover, several circuits are in accord with this position. *See, e.g.*, *Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 694 n.2 (9th Cir. 1992); *Sacred Heart Med. Ctr. v. Sullivan*, 958 F.2d 537, 543 (3d Cir. 1992); *Peyton v. Reynolds Assocs.*, 955 F.2d 247, 253 (4th Cir. 1992); *Barhold v. Rodriguez*, 863 F.2d 233, 237 (2d Cir. 1988). If the record before this Court is adequate for this Court to review the denial of the summary judgment, this Court should engage in such review. As explained, *infra*, the record is adequate for this Court to review the denial of Defendant's motion for summary judgment.

### b.          *Celotex* and "Pointing Out"

As stated, *supra*, on a motion for summary judgment, "the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Specifically,

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323. Thus, a moving party must point out specifically why the nonmoving party fails to present a genuine issue of material fact as to the nonmoving party's case.

Defendant in the instant case pointed out the fact that Plaintiff failed to allege or prove a violation of Sections 15.1 and 15.2 of the operating agreement, as Hailey Oil Services did not have a contract with Chevron, and such a contract was a condition precedent to payment under those Sections. In its memorandum in support of its motion for judgment on the pleadings (converted for this Court's purposes to a motion for summary judgment), Defendant argued, "[Plaintiff] cannot show that A.J. Hall defaulted under the Operating Agreement, because it is undisputed that the

condition precedent to the vesting of A.J. Hall's payment obligations under the Operating Agreement, the existence of a contract with Chevron, was not fulfilled." (J.A. at 121.) We agree with the district court that there was no evidence of a contract with Chevron, so that A.J. Hall did not default on its obligations under Sections 15.1 and 15.2. Therefore, summary judgment in favor of Defendant as to this issue would be proper.

Defendant, however, failed to point out in its motion for judgment on the pleadings (converted for this Court's purposes to a motion for summary judgment) any deficiency in Plaintiff's claim that A.J. Hall failed to make payments in conformance with Section 6.1 of the operating agreement, so that Defendant was liable for those payments.[8] In paragraph 16 of the complaint, Plaintiff alleged:

> The payment of distributions of cash flow to [Plaintiff], as referenced above in Paragraph 14A [which references Section 6.1 of the operating agreement], has been partially satisfied but remains substantially unsatisfied. Specifically, [Plaintiff] was to receive a quarterly distribution of cash flow in the amount of $33,750.00 for the first four (4) calendar quarters of operation. [Plaintiff] did receive an initial cash flow distribution in the amount of $35,425.70 . . . . A.J. Hall failed or refused to make the remaining three payments due.

(J.A. at 11-12.) Defendant did not respond to this allegation in its motion for judgment on the pleadings or its memorandum in support of its motion. While Defendant made the general argument that "[Plaintiff's] Complaint does not contain the critical allegation that the principal obligor, A.J. Hall, defaulted in its payment obligations under the Operating Agreement," Defendant then explained this general statement: "[Plaintiff] cannot show that A.J. Hall defaulted under the Operating Agreement, because it is undisputed that the condition precedent to the vesting of A.J. Hall's payment obligations under the Operating Agreement, the existence of a contract with Chevron, was not fulfilled." (J.A. at 120-21.) The sole focus of Defendant's argument on its motion for judgment on the pleadings was on Sections 15.1 and 15.2 of the operating agreement, not Section 6.1. Defendant therefore failed to meet his burden on summary judgment to "point out" this specific deficiency of Plaintiff's case.

Defendant may argue that it presented to the district court evidence that supported the fact that Hailey Oil Services did not generate positive cash flow after the first quarter, so that there was no breach under Section 6.1; for example, in his affidavit, McDonald implies that Hailey Oil Services did not have positive cash flow for the second, third, and fourth quarters. Assuming *arguendo* that this evidence applies to Defendant's motion for judgment on the pleadings, which is questionable as Defendant submitted the affidavit in response to Plaintiff's motion for summary judgment, Defendant's argument would fail. The mere fact that evidence in the record supported an argument that Defendant failed to make does not correct Defendant's failure to make said argument. Otherwise, the district court, on a motion for summary judgment, would have the responsibility of culling through the record and extrapolating arguments that Defendant could potentially make; this, however, is not the appropriate allocation of burdens on a motion for summary judgment. Defendant has the burden to point out to the district court why it should receive summary judgment, and it failed to do so with respect to Plaintiff's claim under Section 6.1.

Moreover, the fact that Defendant denied the allegations under paragraph 16 of the complaint in its answer is also insufficient to meet its burden on summary judgment. When Defendant denied the allegation, there was then a potential factual dispute as to whether Section 6.1 had been

---

[8]The district court denied Defendant's motion for judgment on the pleadings (here construed as a motion for summary judgment) on the basis that Section 6.1 entitled Plaintiff to absolute payments for each quarter. As explained, *supra*, this basis was incorrect, but the district court nevertheless was correct in its denial of Defendant's motion.

breached.  Defendant still had the burden on summary judgment to point out that Plaintiff did not have any evidence to support Plaintiff's allegations under that paragraph so as to demonstrate no genuine issue of material fact as to this claim.

We recognize that this is a somewhat unusual case in that we are reversing the grant of Plaintiff's motion for summary judgment because Plaintiff failed to put forth any evidence that Section 6.1 was breached, yet we are also denying Defendant's motion for summary judgment because it failed to point out the lack of evidence as to Plaintiff's claim under Section 6.1.  The point, however, is that Supreme Court case law mandates this result.  Under *Celotex*, if a plaintiff put forth a complaint and then provided no evidence for its claim, the defendant should not make a motion for summary judgment, without pointing out the deficiencies of the plaintiff's case, and then expect the court to rule in the defendant's favor.  *Celotex* places a minimal burden on the moving party; the moving party need not support its motion for summary judgment with evidence; instead, it only must point out the deficiencies of the nonmoving party's case.  477 U.S. at 324-25. Defendant in the instant case did not even meet this minimal burden, so that this Court must uphold the district court's denial of summary judgment as to this claim.

## III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of Plaintiff's motion for summary judgment, **AFFIRM** the district court's partial grant of Defendant's motion for summary judgment and partial denial of the same motion, and **REMAND** the case for further proceedings consistent with this opinion.