NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0455n.06

No. 21-3659

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JASON COTTERMAN, | ) | **FILED** |
| | ) | Oct 30, 2023 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| CITY OF CINCINNATI, OHIO; ELIOT | ) | OHIO |
| ISAAC, in his official capacity as Chief of | ) | |
| Police for the Cincinnati Police Department; | ) | OPINION |
| MICHELLE LONGWORTH, in her official | ) | |
| capacity as a City of Cincinnati Police Officer | ) | |
| and her individual capacity, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: MOORE, READLER, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. This case implicates two rules of federal procedure—one about motions to dismiss and the other about supplemental jurisdiction. Jason Cotterman, a former Cincinnati police officer, brought federal and state claims against the City of Cincinnati (among other defendants). Cotterman completed extensive discovery before the district court got the chance to review the City's motion to dismiss his second amended complaint. He asked the court to convert the City's motion to dismiss into a motion for summary judgment so that it could consider the evidence that he uncovered in discovery. Under our precedent, however, the court had discretion to decline Cotterman's request to review outside-the-complaint evidence. It thus properly evaluated the sufficiency of the complaint alone.

At the same time, the district court ignored Cotterman's state claims. It seemingly retained jurisdiction over these claims and rejected them on the merits without any reasoning. Yet a district court may, and often should, refuse to exercise supplemental jurisdiction over state claims when, as in this case, it dismisses the federal claims ahead of trial. 28 U.S.C. § 1367(c)(3). Indeed, our cases establish a "strong presumption" in favor of declining that jurisdiction and allowing state courts to resolve state claims. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). So the district court's failure to identify any "unusual circumstances" that might have justified its retention of jurisdiction over the state claims warrants a remand. *Id.* (citation omitted).

All told, we affirm the dismissal of Cotterman's federal claims. But we reverse the dismissal of his state claims and remand for proceedings consistent with this opinion.

I

Because this case reaches us at the pleading stage, we accept the following allegations from the complaint as true. *See Rudd v. City of Norton Shores*, 977 F.3d 503, 507 (6th Cir. 2020).

After training at the police academy in 2003, Cotterman diligently served as a police officer with the Cincinnati Police Department for over a decade. 2d Am. Compl., R.107, PageID 1866. His superiors gave him glowing reviews throughout this time. *Id.*

But things changed in March 2015. That month, Cotterman responded to an off-duty police officer's single-car accident. *Id.* Cotterman did not believe that this officer showed any signs of intoxication and so did not cite him for a traffic offense. *Id.*, PageID 1866–67. But a witness opined to a different investigator that the officer's erratic driving suggested that he had been drunk. *Id.*, PageID 1867. Cotterman did not learn of this information at the time. *Id.* Regardless, the

information turned out to lack credibility. *Id.* A sergeant would later agree that Cotterman acted properly. *Id.*

Nevertheless, others in the police department (including, apparently, the chief of police) believed that Cotterman should have charged the off-duty officer. They orchestrated a retaliatory scheme against Cotterman for his refusal to do so. *Id.* Cotterman suggests that the department had a "policy" of "rewarding favorites of the Chief and punishing those who hurt favorites of the Chief[.]" *Id.* Acting under this policy, officers interrogated Cotterman about a "potential criminal charge" against him for his handling of the accident investigation. *Id.*, PageID 1867–68. An officer participating in the interrogation told Cotterman that it was in his "interest" to stick to the department's "version of events" (that the off-duty officer had been drunk). *Id.*, PageID 1868. Refusing this request, Cotterman exercised his right to remain silent. *Id.* In response, the department suspended his "police powers," ordered him to visit a department psychologist, and reassigned him to another district. *Id.*

A few months later, prosecutors indicted Cotterman on criminal charges: two counts of dereliction of duty and four counts of obstruction of justice. *Id.* These charges caused Cotterman great stress. *Id.* The department psychologist soon placed him on administrative leave because of his mental-health struggles. *Id.*

Cotterman stood trial before a judge in March 2016. *Id.*, PageID 1869. According to Cotterman, the City's own expert took his side of the events after learning all the facts. *Id.* So the judge unsurprisingly found him not guilty. *Id.*

Weeks later, however, the police department "administratively discharge[d]" Cotterman for medical reasons. *Id.* As its grounds, the department relied on "personal" and "humiliating" information from Cotterman's earlier service in the Marine Corps before he joined the Cincinnati

police. *Id.* To Cotterman's surprise, Michelle Longworth in the internal investigations unit had secretly obtained his military records. *Id.*, PageID 1869–70. She did so with the help of an FBI agent named Matt DeBlauw. *Id.* Cotterman never authorized this improper release of his records. *Id.*, PageID 1870. The records also purportedly did not justify his discharge. *Id.*, PageID 1871. Instead, Cotterman asserts that the department terminated him because he refused to "toe the line" and agree to its false narrative about the car accident. *Id.*

In the year after his discharge, Cotterman improved his mental state. *Id.*, PageID 1872. He visited psychologists from other police departments, who gave him a "clean bill of health." *Id.* But a psychologist with the Cincinnati Police Department continued the department's campaign of "retaliation" by opining that Cotterman remained unfit for duty. *Id.*

Cotterman responded by suing. In his currently operative complaint, he brought federal claims under 42 U.S.C. § 1983 against the City of Cincinnati, Chief of Police Eliot Isaac, and Officer Longworth. He alleged that these defendants (collectively, "the City") violated and conspired to violate his due-process right to privacy and Fourth Amendment right against unreasonable searches. *Id.*, PageID 1873–74, 1877. He also brought two state claims against the City, alleging that its criminal charges had amounted to a tortious abuse of process and malicious prosecution. *Id.*, PageID 1875–76. Finally, Cotterman brought two claims against FBI Agent DeBlauw: a right-to-privacy claim under the implied cause of action from *Bivens v. Six Unknown Named Agents of the Federal Narcotics Bureau*, 403 U.S. 388 (1971), and a separate statutory claim under the Privacy Act, 5 U.S.C. § 552a(g)(4). *Id.*, PageID 1876–77.

After Cotterman sued, the parties spent years engaging in pleading and discovery practice. They filed three rounds of pleadings. The City answered Cotterman's original complaint. He later received permission to file a first amended complaint, which named DeBlauw for the first time.

4

The City (and DeBlauw) moved to dismiss the amended complaint. Cotterman then got leave to file his (now operative) second amended complaint. But the City and DeBlauw sought to dismiss it too. Along with its motion, the City filed court records from the criminal case against Cotterman.

As the parties went through these rounds of pleadings, Cotterman deposed over a dozen officials. He alleges that this discovery revealed that a former Chief of Police (Jeffrey Blackwell) routinely retaliated against officers who had brought undue attention to the department even after they had been "cleared" of wrongdoing. Appellant's Br. 4. One union official highlighted many examples. Fangman Dep., R.74, PageID 1155–61.

Discovery also revealed that Assistant Chief James Whalen allegedly "had it out" for the off-duty officer involved in the car accident. Sulfsted Dep., R.84, PageID 1419. Cotterman believed that the department sought to punish this officer for this "politically motivated" reason. Cotterman Aff., R.87-1, PageID 1489. And even though prosecutors charged Cotterman, some investigators opined that he had committed "no criminal act" in refusing to cite the off-duty officer. Hennie Dep., R.84, PageID 1195. Even Chief Blackwell testified that the evidence did not justify "a criminal charge[.]" Blackwell Dep., R.86, PageID 1442. After Cotterman's acquittal, moreover, Blackwell recalled Assistant Chief Whalen saying something like: "[T]hat's okay, we will get him, he has got some issues with the military, so we will get him a different way[.]" *Id.*, PageID 1443. Blackwell also found it "plausible" that high-ranking officers retaliated against Cotterman for failing to stick to the official story about the car accident. *Id.*, PageID 1444.

In light of the "voluminous record," Cotterman's response to the City's motion to dismiss asked the district court to convert it into a summary-judgment motion. Resp., R.114, PageID 1973. Apart from a paragraph of analysis, though, Cotterman did not flesh out this request. His response

5

also simply assumed that the court would agree. He defended against the City's motion by relying on the evidence developed in discovery rather than the allegations pleaded in the complaint.

The district court granted the motions to dismiss. *Cotterman v. City of Cincinnati*, 2021 WL 2635491, at *7 (S.D. Ohio June 25, 2021). While the court did not discuss Cotterman's request to convert the City's motion into a summary-judgment motion, it impliedly denied the request by refusing to do so. *Id.* at *2–6. On the merits, the court reasoned that Cotterman had sued all City defendants (including Chief Isaac and Officer Longworth) in their official capacities. All of these claims were solely against the City itself. *Id.* at *2. And the court concluded that the complaint did not plausibly allege the type of policy that could justify holding the City liable under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978). *Cotterman*, 2021 WL 2635491, at *2–3. As for Cotterman's claims against Officer Longworth in her individual capacity, the court found her entitled to qualified immunity. *Id.* at *3–4. Lastly, it held that the *Bivens* cause of action did not reach Cotterman's right-to-privacy claim against Agent DeBlauw. *Id.* at *5. The court also found that qualified immunity would protect DeBlauw and that Cotterman had not filed a timely claim against him. *Id.* at *5–6. The court did not squarely address Cotterman's Privacy Act claim against Agent DeBlauw. *See id.* It also did not discuss his state claims against the City. Still, the court dismissed all claims with prejudice.

II

Cotterman appealed but has since dismissed his claims against Agent DeBlauw. He contends that the district court wrongly dismissed his complaint against the City for three reasons. First, he renews his claim that the court should have converted the City's motion to dismiss into a summary-judgment motion. Second, he argues that he presented an actionable *Monell* claim. Third, he asserts that the district court overlooked his two state claims.

A. *Failure to Convert*. Cotterman first argues that the district court should have converted the City's motion to dismiss into a summary-judgment motion. To reject this claim, we must begin with a basic refresher on Federal Rule of Civil Procedure 12. Rule 12 permits a defendant to file a motion to dismiss rather than an answer if the defendant believes that a complaint has "fail[ed] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Our longstanding pleading rules require district courts to consider only the complaint's factual allegations—not outside evidence—when deciding whether the complaint has stated a claim. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020); *see Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). This general instruction to stay within the complaint's four corners contains only a few exceptions. Apart from the complaint, courts may also rely on, among other things, items attached to the complaint, information subject to judicial notice, or, most relevant here, "public records[.]" *Rondigo*, 641 F.3d at 680–81.

Sometimes, though, parties rely on outside evidence that does not fall within one of these exceptions. Most commonly, defendants might try to bolster their motion with evidence to show that the plaintiff's suit will inevitably fail (say, because of an affirmative defense) even if the complaint technically suffices. *See Bates*, 958 F.3d at 483 (citing 5C Charles A. Wright et al., *Federal Practice and Procedure* § 1366, at 150, 155–56 (3d ed. 2004)). And even plaintiffs might seek to bolster their complaint with new allegations in a response to a motion to dismiss. *See id.* Yet courts may not rely on this information. *See id.* at 483–84.

How should courts respond if a party introduces these outside materials at the motion-to-dismiss stage? This question (about what were known as "speaking motions") once generated considerable debate in the federal courts. *See* 5C Wright, *supra*, § 1364, at 75 (Supp. 2023). But the Supreme Court added what is now Rule 12(d) to resolve that debate. The rule provides that if

"matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). We generally give district courts discretion either to exclude this outside information (and treat the motion as a motion to dismiss subject to Rule 12's standards) or to consider the information (and treat the motion as a summary-judgment motion subject to Rule 56's standards). *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010); *see also Estate of Zakora v. Chrisman*, 44 F.4th 452, 469 (6th Cir. 2022); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

That said, we have read Rule 12(d)'s text to give district courts just two options. They must *expressly* exclude outside-the-complaint materials or convert the motion to one for summary judgment. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006); *see also Courser v. Mich. House of Reps.*, 831 F. App'x 161, 169 (6th Cir. 2020). So a court commits a legal error if it *ignores* the outside materials but treats the motion as a motion to dismiss. *See Max Arnold*, 452 F.3d at 503. Yet we will view this technical error as harmless if the court's logic did not rest on the outside materials. *See Bates*, 958 F.3d at 484. In other words, we will not reverse a district court that properly dismissed a complaint based on the complaint's allegations alone simply because the court did not expressly acknowledge and refuse to consider the "extraneous matters." 5C Wright, *supra*, § 1364, at 75 (Supp. 2023); *see Courser*, 831 F. App'x at 169. (For full disclosure, *Max Arnold* and *Bates* involved motions for judgment on the pleadings under Rule 12(c), not motions to dismiss under Rule 12(b)(6). Further, we decided *Max Arnold* in 2006 when the current language in Rule 12(d) was found in both Rule 12(b) and Rule 12(c). In 2007, the Supreme Court amended Rule 12 by deleting this duplicative language and adding it once in Rule 12(d). Rule 12(d) now applies to motions to dismiss and to motions for judgment on the pleadings, so the same framework governs both. *See Courser*, 831 F. App'x at 169.)

Cotterman has shown no reversible error under these standards. To begin with, the City attached only records from Cotterman's criminal case to its motion to dismiss. The City reasoned that these documents qualified as "public records" that a court may consider without converting a motion to dismiss into a motion for summary judgment. *Rondigo*, 641 F.3d at 681. Cotterman did not dispute this argument in the district court or in his opening brief on appeal. He thus forfeited any contrary claim. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1012, 1016–17 (6th Cir. 2022).

Next, Cotterman presented plenty of outside evidence in his response to the City's motion to dismiss, including his affidavit and many deposition transcripts. This evidence does not fall within any exception to the ban on using materials outside the complaint when resolving a motion to dismiss. *See Rondigo*, 641 F.3d at 681. But the district court did not rely on Cotterman's "extraneous" materials when dismissing his complaint. 5C Wright, *supra*, § 1364, at 75 (Supp. 2023). It instead asked whether the complaint's allegations alone plausibly stated a claim under the pleading standards from *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Cotterman*, 2021 WL 2635491, at *3. The court did not abuse its discretion by deciding to assess the complaint on the complaint's own terms rather than consider Cotterman's evidence. *Cf. Zakora*, 44 F.4th at 469; *Courser*, 831 F. App'x at 169.

Admittedly, the district court may have committed a technical error under our caselaw by failing to *expressly* exclude Cotterman's evidence. *See Max Arnold*, 452 F.3d at 503. Even so, this error would provide no grounds for reversal. For one thing, Cotterman did not cite this legal authority in the district court or on appeal. He thus forfeited any reliance on it too. *See Bannister*, 49 F.4th at 1012. For another thing, any error would have likely been harmless because, again,

the district court granted the motion to dismiss based only on the complaint's allegations. *See Courser*, 831 F. App'x at 169; *Bates*, 958 F.3d at 484.

In response, Cotterman invokes the Supreme Court's motion-to-dismiss standards. A complaint must allege facts that "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. And deciding whether a complaint meets this plausibility test is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* According to Cotterman, this sentence required the district court to look outside the complaint because the "context" here includes his evidence. Appellant's Br. 24–25. He misreads this sentence. For decades, it has been "black-letter law" that courts must not review outside materials when evaluating a complaint's sufficiency. *Bates*, 958 F.3d at 483. *Iqbal* did not create a pleading revolution by jettisoning this rule. Rather, *Iqbal* reasoned that a court can consider the factual context when evaluating whether a complaint has alleged plausible misconduct. 556 U.S. at 679. Consider *Twombly*, which involved the antitrust context. 550 U.S. at 557. The Court reasoned that a plaintiff seeking to prove an unlawful agreement to fix prices must allege more than just that two competitors had engaged in "parallel conduct." *Id.* at 554, 556–57. This conclusion rested on the judicial experience "that lawful parallel conduct" alone "fails to bespeak unlawful agreement." *Id.* at 556. *Twombly*'s discussion nowhere implied that courts could look to *evidence* outside the complaint when deciding whether the complaint's allegations sufficed.

At day's end, there is an "irony" in Cotterman's legal strategy. *Beddal v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 n.2 (1st Cir. 1998). He asked the district court to switch to Rule 56's summary-judgment rules, which would have imposed a *more difficult* test on him than Rule 12's pleading rules. *Id.* And if he wanted to rely on the new facts learned during discovery at this motion-to-dismiss stage, he had a "readily available tool" for doing so: "a motion to amend the

complaint under Rule 15." *Bates*, 958 F.3d at 483. Indeed, he even used this tool by obtaining the district court's permission to file a second amended complaint. To get the court to consider (and indeed accept as true) the new facts, then, he only needed to allege them in that complaint (rather than in his response to the motion to dismiss). He must bear the consequences for his lawyer's inexplicable failure to do so.

B. Monell *Claim*. Cotterman next argues that the district court wrongly dismissed his *Monell* claim against the City for its policy of retaliating against officers who challenged the City's official positions. Here again, however, Cotterman relies on the evidence that he discovered—not his complaint's allegations. He identifies the many examples of this retaliation from Jeffrey Blackwell's time as chief of police. He adds that Blackwell found it "plausible" that Assistant Chief Whalen retaliated against him. Blackwell Dep., R.86, PageID 1444.

This evidence again does Cotterman no good. At this stage, he must show that his complaint's allegations "plausibly" establish that the City had a policy of violating its officers' rights and that his injuries sprang from that policy. *Iqbal*, 556 U.S. at 679; *see Bailey v. City of Ann Arbor*, 860 F.3d 382, 388–89 (6th Cir. 2017). But he relies on facts nowhere found in the complaint. His complaint did not even mention Chief Blackwell or Assistant Chief Whalen, let alone allege that they engaged in misconduct. His arguments thus do nothing to show that the district court misapplied *Iqbal*'s pleading standards to his complaint's *Monell* allegations.

C. *State Claims*. Cotterman lastly argues that, after dismissing his federal claims, the district court should have declined to exercise jurisdiction over his state claims. This argument requires a different refresher on federal practice. Congress has given district courts "supplemental jurisdiction" over state claims if those claims are "so related to" the federal claims over which the courts have original jurisdiction "that they form part of the same case or controversy" within the

meaning of Article III of the Constitution. 28 U.S.C. § 1367(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552–57 (2005). In this case, the district court had jurisdiction under 28 U.S.C. § 1331 over Cotterman's federal claims. And Cotterman's state abuse-of-process and malicious-prosecution claims had the required connection to the federal claims under § 1367(a).

But Congress also gave district courts discretion to refrain from exercising supplemental jurisdiction in various circumstances. *See* 28 U.S.C. § 1367(c). As relevant here, a court "may decline" that jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]" *Id.* § 1367(c)(3). Because this text gives district courts flexibility, we review a decision about whether to decline supplemental jurisdiction under the deferential abuse-of-discretion standard. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Yet "[d]iscretion" does not mean "whim[.]" *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005). So a district court must exercise its discretion in accord with the "legal standards" that we have adopted to ensure "that like cases" get "decided alike." *Id.*; *see Musson*, 89 F.3d at 1254.

In that respect, we have held that a district court that has dismissed all federal claims should weigh several factors when deciding whether to keep jurisdiction over state claims or to dismiss them without prejudice. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010). Among other things, courts should consider whether declining jurisdiction would lead to wasteful duplicative proceedings because, for example, the federal and state claims follow overlapping legal tests. *See Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 352 (6th Cir. 2015); *cf. Burkhead & Scott, Inc. v. City of Hopkinsville*, 666 F. App'x 407, 409 (6th Cir. 2016) (per curiam). Courts should consider whether declining (or retaining) jurisdiction would inconvenience or cause unfairness to one of the parties. *See Gamel*, 625 F.3d at 951. They should consider whether retaining jurisdiction would undermine federal-state comity because, say, the state claims raise

difficult state-law questions. *See Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021); *Moon*, 465 F.3d at 728. And they should consider whether a plaintiff has engaged in "forum manipulation" by, for example, voluntarily dismissing the federal claims after a defendant has removed the suit to federal court. *See Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211–12 (6th Cir. 2004).

This balance of factors "ordinarily" has a clear result. *Moon*, 465 F.3d at 728. We have repeatedly recognized that a district court should generally decline jurisdiction over state claims if it has resolved the federal claims before trial. *See Kowall*, 18 F.4th at 549; *Bartlett v. Washington*, 793 F. App'x 403, 408–09 (6th Cir. 2019); *Sampson v. Village of Mackinaw City*, 685 F. App'x 407, 418 (6th Cir. 2017); *Musson*, 89 F.3d at 1254–55. Indeed, we have created a "strong presumption" in favor of such a dismissal. *Oberer Land Devs. Ltd. v. Sugarcreek Township*, 2022 WL 1773722, at *6 (6th Cir. June 1, 2022) (quoting *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011)). And this presumption grows even stronger when the court has dismissed the federal claims on a motion to dismiss. *See Musson*, 89 F.3d at 1255. In that situation, a court should retain jurisdiction only in "unusual circumstances[.]" *Id.* (citation omitted); *cf. Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002).

To qualify as an abuse of discretion, a district court's "weighing" of the "relevant factors" must leave us with a "definition and firm conviction" that it clearly erred. *Gamel*, 625 F.3d at 951 (citation omitted). Here, however, this appellate review is difficult even to undertake because the district court gave us nothing to review. The court's opinion did not discuss Cotterman's abuse-of-process and malicious-prosecution claims. *See Cotterman*, 2021 WL 2635491, at *1–7. We would not even know that the court rejected the claims on the merits but for its judgment indicating that *all* claims were dismissed with prejudice. Judgment, R.124, PageID 2311. So the court must have silently retained supplemental jurisdiction over these state claims.

13

Can a district court abuse its discretion through silence? In other contexts, we have suggested that a district court's lack of reasoning can warrant a remand if we cannot identify why it exercised its discretion the way that it did. *See, e.g.*, *United States v. Choummanivong*, 667 F. App'x 535, 535–36 (6th Cir. 2016) (per curiam); *Crossley Const. Corp. v. NCI Bldg. Sys., L.P.*, 123 F. App'x 687, 694 (6th Cir. 2005); *DWG Corp. v. Granada Invs., Inc.*, 962 F.2d 1201, 1202 (6th Cir. 1992) (order); *see also Moross Ltd. P'ship v. Fleckenstein Cap., Inc.*, 466 F.3d 508, 519–20 (6th Cir. 2006). And in this context, other courts have recognized that a district court's "lack of an explanation" about why it retained supplemental jurisdiction can amount to an abuse of discretion. *See Patel v. Univ. of Notre Dame du Lac*, 2023 WL 2387220, at *2 (7th Cir. Mar. 7, 2023) (order); *see also Voda v. Cordis Corp.*, 476 F.3d 887, 904 (Fed. Cir. 2007).

This principle applies here too. The district court's failure to explain why it retained jurisdiction "prohibits us from examining the soundness of its discretionary judgment." *DWG*, 962 F.2d at 1202. The court's reasons are not "obvious" to us. *Choummanivong*, 667 F. App'x at 536. Far from it. Its decision runs counter to the "strong presumption" to decline jurisdiction in this setting. *Musson*, 89 F.3d at 1255. And the judicial economies do not obviously point in one direction or the other. The resolution of the federal claims, for example, has little "bearing on" the validity of Cotterman's abuse-of-process and malicious-prosecution claims. *Faughender v. City of North Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991). And the district court did not spend much time resolving the merits of the state claims because it did not devote even a sentence to explaining why those claims fail. So declining jurisdiction at this point may not waste much court resources.

The City responds that ample reasons exist to retain jurisdiction. For example, this suit has been pending for years and the parties conducted discovery. But the district court did not recite these reasons. Since § 1367(c) vests discretion in the district courts rather than the circuit courts,

we will not invent a justification on our own. Instead, we will give the district court the chance to explain whether it should exercise jurisdiction over (or dismiss) the state claims. If it retains jurisdiction, it can then explain why the state claims fail on the merits.

\* \* \*

We affirm in part and reverse in part. We affirm the dismissal of the federal claims. But we reverse the dismissal of the state claims and remand for the district court to clarify whether it should dismiss the state claims without prejudice or retain supplemental jurisdiction over them.