RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TODD A. BATES; MARCIA C. BATES,

          *Plaintiffs-Appellants*,

    *v.*

GREEN FARMS CONDOMINIUM ASSOCIATION; THE HIGHLANDER GROUP MMC, INC.; MAKOWER ABBATE GUERRA WEGNER VOLLMER, PLLC,

          *Defendants-Appellees*.

No. 19-2127

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:18-cv-13533—Avern Cohn, District Judge.

Decided and Filed: May 4, 2020

Before: SUHRHEINRICH, BUSH, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:** Paul G. Valentino, PAUL G. VALENTINO, J.D., P.C., Bloomfield Hills, Michigan, for Appellants. Sidney A. Klingler, SECREST WARDLE, Troy, Michigan, for Green Farms and Highlander Group Appellees. Kathleen H. Klaus, Jesse L. Roth, MADDIN HAUSER ROTH & HELLER, P.C., Southfield, Michigan for Appellee Makower Abbate Guerra Wegner Vollmer, PLLC.

─────────────────

## OPINION

─────────────────

MURPHY, Circuit Judge. The Fair Debt Collection Practices Act regulates "debt collectors." The Act defines "debt collector" generally to cover parties who operate a "business the principal purpose of which is the collection of any debts" or who "regularly collect[] or

attempt[] to collect" debts owed another. 15 U.S.C. § 1692a(6). But the Act adds a separate debt-collector definition "[f]or the purpose of section 1692f(6)," a subsection regulating the repossession of property. *Id.* This separate definition also covers parties who operate a "business the principal purpose of which is the enforcement of security interests." *Id.* The distinction between these two definitions matters greatly: General debt collectors must comply with all of the Act's protections; security-interest enforcers need only comply with § 1692f(6). The Supreme Court recently held that parties who assist creditors with the nonjudicial foreclosure of a home fall within the separate definition, not the general one. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019). Yet *Obduskey* left open the possibility that these parties might engage in "*other* conduct" that would transform them from security-interest enforcers into general debt collectors (and subject them to all of the Act's regulations). *Id.* at 1040.

In this case, Todd and Marcia Bates lost their condominium through a nonjudicial foreclosure after they fell behind on their condo-association dues. During the foreclosure process, the Bateses claim, the condo complex's management company and its law firm violated various provisions of the Act. But the Bateses do not assert a violation of § 1692f(6), so their complaint needed to allege that the law firm and condo management company acted as general debt collectors, not security-interest enforcers, in the course of this foreclosure. We consider on appeal whether the complaint has identified enough "*other* conduct" to trigger *Obduskey*'s reservation and potentially transform these defendants into general debt collectors. *Id.* The district court thought not and granted judgment on the pleadings to the defendants. We affirm.

I

A

This case concerns the relationship between two statutory regimes that govern the collection of a debt secured by a debtor's home: Michigan's nonjudicial-foreclosure law and the federal Fair Debt Collection Practices Act.

Michigan has long followed a "foreclosure by advertisement scheme." *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 822 (Mich. 2016). Under this scheme, a lender

(the mortgagee) may foreclose on the home securing its loan to a defaulting borrower (the mortgagor) through a public sale of the home without a state court's supervision. *Id.*; Mich. Comp. Laws §§ 600.3201–.3285. This law identifies "the circumstances that must exist before foreclosure by advertisement can occur, the procedure that the mortgagee must follow, and the mortgagor's right of redemption." *Bank of Am.*, 878 N.W.2d at 822. Before a lender may foreclose, the borrower must have defaulted on "a condition of the mortgage." Mich. Comp. Laws § 600.3204(1)(a). And if a lender chooses to foreclose in this nonjudicial manner, the lender may not simultaneously file a suit to recover the debt. *Id.* § 600.3204(1)(b). The lender must also periodically publish a notice in a local newspaper "that the mortgage will be foreclosed by a sale of the mortgaged premises," and post the notice in a conspicuous place on the property. *Id.* § 600.3208. The notice must include basic information about the property and sale. *Id.* § 600.3212. If the lender successfully sells the property, the defaulting borrower has a last chance to reclaim it by paying a specified amount within a specified time. *Id.* § 600.3240(1); *see also Thompson v. Five Bros. Mortg. Co. Servs. & Securing, Inc.*, __ F. App'x __, 2020 WL 413707, at \*3 (6th Cir. Jan. 27, 2020). Michigan law also permits condominium associations to use this nonjudicial-foreclosure process to collect a condo owner's delinquent dues, which become a lien on the owner's condo at the time of their assessment. *See* Mich. Comp. Laws § 559.208(1)–(2).

The Fair Debt Collection Practices Act, by comparison, governs the debt-collection efforts of statutorily defined "debt collectors." *See Obduskey*, 139 S. Ct. at 1036. The Act, among other things, regulates communications with debtors, 15 U.S.C. §§ 1692c, 1692g; stops harassing actions, *id.* § 1692d; prohibits false or misleading claims, *id.* § 1692e; and limits unfair collection methods, *id.* § 1692f. The Act has a complex definition of the "debt collectors" it regulates. The definition starts with a general provision: "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts." *Id.* § 1692a(6). It also lists several individuals or entities that do not qualify as debt collectors and that fall outside the Act. *Id.* § 1692a(6)(A)–(F). In between, the definition contains a unique provision making a person who enforces a security interest a debt collector but only for a narrow purpose: "*For the purpose of section 1692f(6)* of

this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* (emphasis added). The identified subsection applicable to these security-interest enforcers—§ 1692f(6)—regulates a debt collector's ability to "[t]ak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property." *Id.* § 1692f(6).

Mortgages triggering nonjudicial-foreclosure processes like Michigan's are "security interests" protecting a lender from the risk that a borrower will not repay a loan. *See Obduskey*, 139 S. Ct. at 1033 (citing Restatement (Third) of Property: Mortgages § 1.1 (1996)). So which of the Act's debt-collector definitions applies to parties (typically lawyers) who help lenders enforce these security interests by proceeding through the nonjudicial-foreclosure process? Before 2019, circuit courts disagreed on this question. Some held that these parties fell within the unique definition for individuals who enforce security interests and so were subject only to § 1692f(6). *E.g.*, *Vien-Phuong Thi Ho v. ReconTrust Co.*, 858 F.3d 568, 571–72 (9th Cir. 2017). Others, including our court, held that these parties fell within the general definition of "debt collector" and so were subject to the entire Act. *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 464–65 (6th Cir. 2013). The Act, for example, requires a debt collector to stop collection efforts if a debtor disputes a debt until the debt collector confirms its validity. 15 U.S.C. § 1692g(b). We had held that this provision applied to a lawyer undertaking a Michigan foreclosure by advertisement, thereby requiring the lawyer to postpone the statutorily required notices until verifying the debt's validity. *See Scott v. Trott Law, P.C.*, 760 F. App'x 387, 393 (6th Cir. 2019).

The Supreme Court recently resolved this split in a decision rejecting our caselaw. In *Obduskey*, it held that a lawyer who oversaw a nonjudicial foreclosure fell within the Act's unique definition covering the enforcement of a security interest. 139 S. Ct. at 1036. This conclusion meant that only § 1692f(6), not the entire Act, governed the lawyer's conduct. *Id.* The debtor had argued that the lawyer took more actions than simply enforcing a security interest because he sent notices to the debtor "that any ordinary homeowner would understand as an attempt to collect a debt backed up by the threat of foreclosure." *Id.* at 1039. The Court disagreed that these notices transformed the lawyer from a security-interest enforcer into a

general debt collector. It assumed that "the notices sent by [the lawyer] were antecedent steps required under state law to enforce" the security interest. *Id.* Explaining that "he who wills the ends must will the necessary means," the Court read the Act's exclusion for security-interest enforcers to cover all the state-law steps required to undertake such a foreclosure. *Id.* The Court cautioned, however, that this exclusion did not give those who enforce security interests a blanket license to take actions barred by the Act, such as making abusive late-night calls. *Id.* But the Court left open "what *other* conduct (related to, but not required for, enforcement of a security interest) might transform a security-interest enforcer into a debt collector subject to the main coverage of the Act." *Id.* at 1040.

B

This case implicates the question the Supreme Court reserved. Because the district court dismissed the complaint on the pleadings, we take as true the complaint's well-pleaded factual allegations. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).

As far as we can tell from the complaint (which is sparsely populated with facts), Todd and Marcia Bates owned a condominium at the Green Farms Condominium complex in West Bloomfield, Michigan. Highlander Group, MMC, Inc., managed the condo complex. The Bateses paid monthly condo-association dues to the Green Farms Condominium Association. The complaint is unclear as to when, whether, or how much the Bateses fell behind in these payments. From December 2017 to August 2018, the complaint says, they paid these monthly dues by hand delivering cashier's checks to Highlander staff. The checks, which were apparently cashed, totaled $3,276.24. Yet the complaint alleges that in June 2018 Highlander put a $2,814.50 lien on their condo for unpaid dues.

Highlander hired a law firm, Makower Abbate Guerra Wegner Vollmer, PLLC, to undertake a nonjudicial foreclosure of the Bateses' condo, which allegedly violated the condo bylaws. Highlander and Makower advertised the Bateses' condo for sale. At a foreclosure sale on about August 28, the highest bidder, Trademark Properties of Michigan, LLC, bought the condo for $37,859.29. This price fell well below the amount at which the Bateses valued their condo—at over $150,000. (The complaint does not say whether the Bateses also had a mortgage

on their condominium that would remain valid as against the new purchaser under Michigan law. *See* Mich. Comp. Laws § 600.3236.)

The Bateses sued Green Farms, Makower, and Highlander. They asserted a claim under the Fair Debt Collection Practices Act against Makower and Highlander, alleging that these defendants acted as "debt collectors" when they undertook the foreclosure. The complaint contained two paragraphs describing the conduct that allegedly violated the Act. The first paragraph asserted that Makower and Highlander engaged in conduct "to harass, oppress, or abuse [them] in violation of 15 USC [§ 1692d] when [Makower and Highlander] wrongfully recorded a lien against [their] real estate and foreclosed on the real estate by advertisement in violation of the condominium by laws." The second paragraph asserted that Makower and Highlander "falsely represented the character, amount or legal status of [the Bateses'] condominium association dues, as delinquent, held the [cashier's] checks paid by [the Bateses] and overstated and falsely added charges in violation of 15 USC § 1692e(2)(A) and recorded a false lien and foreclosed on the real property in violation of the condominium by laws." Apart from their claim under the Fair Debt Collection Practices Act, the Bateses added three state-law claims for slander on their title and conversion.

The district court dismissed the Bateses' complaint on the pleadings under Federal Rule of Civil Procedure 12(c). The court reasoned that *Obduskey* doomed their debt-collection claim against Makower because the claim arose from the law firm's "handling of nonjudicial foreclosure proceedings relative to their condominium unit." While the Bateses attempted to distinguish *Obduskey* on the ground that Makower had done more than enforce a security interest in their condo, the court held that their complaint failed to adequately plead additional conduct. Turning to Highlander, the court found that the Bateses failed to allege any facts suggesting that a condo management company was a "debt collector." After dismissing the Bateses' federal claim, the court declined supplemental jurisdiction over their state claims. The Bateses appeal and we review this decision de novo. *See Barany-Snyder*, 539 F.3d at 332.

II

To recap, entities that fall within the Fair Debt Collection Practices Act's general definition of debt collector must comply with all of the Act's regulations. *See* 15 U.S.C. § 1692a(6). But entities that fall within the separate definition applicable to those who enforce security interests must comply with only § 1692f(6). *See id.* § 1692a(6). And *Obduskey* holds that parties who help lenders proceed through a state's nonjudicial-foreclosure process fall within the separate definition triggering only § 1692f(6)'s protections, not the general definition triggering all of the Act's protections. The Bateses also do not assert a violation of § 1692f(6); they assert violations of a provision barring harassment (§1692d) and a provision barring false representations about the debt (§ 1692e(2)(A)). Nor do they dispute that the lien on their condo qualifies as a "security interest" under § 1692a(6). This case thus boils down to the following question: Did the Bateses' complaint plead enough facts to take Makower and Highlander outside the separate definition for security-interest enforcers and bring them within the general debt-collector definition?

Before addressing that question, we start with the standards governing our review. A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6). *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). A court evaluating that type of motion thus must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017). Courts must accept as true all well-pleaded factual allegations, but they need not accept legal conclusions. *Iqbal*, 556 U.S. at 678. And the well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." *Id.* at 679. Pleaded facts will do so if they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Pleaded facts will not do so if they "are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under these standards, the Bateses' complaint does not plausibly show that Makower and Highlander were "debt collectors" within the meaning of the Act's general definition. *See id.* We start "by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth." *Id.* at 679. The complaint alleges that Makower and Highlander "were acting as debt collectors" under 15 U.S.C. § 1692a(6) when they engaged in the conduct about which the Bateses complain. But we need not accept this "conclusory statement[]" as true if the complaint has not supported it with enough pleaded facts to plausibly suggest that Makower and Highlander were, in fact, general debt collectors. *Id.* at 678; *Yaldo v. Homeward Residential, Inc.*, 622 F. App'x 514, 516 (6th Cir. 2015) (per curiam); *see Helms v. Wells Fargo Bank, N.A.*, 775 F. App'x 895, 896 (9th Cir. 2019) (mem.); *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 968 (11th Cir. 2019); *Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016). The complaint does not do so. It contains no *general* allegations about Makower's or Highlander's regular business activities and its *specific* allegations about their actions against the Bateses do not take this case outside *Obduskey*'s rule.

To begin with, the Act's general debt-collector definition ties a defendant's "debt collector" status not to what the defendant specifically did in a given case, but to what the defendant generally does. *See Thompson*, 2020 WL 413707, at *2; *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 411 (6th Cir. 1998); *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721–22 (2017). The statute reaches an entity who is "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This text makes critical the "principal purpose" of the defendant's business or the actions that the defendant "regularly" undertakes. 15 U.S.C. § 1692a(6); *see Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999) (defining "regularly"). Here, however, the Bateses' complaint contains almost no well-pleaded allegations about the principal business or regular activities of either Makower or Highlander.

Start with Makower. The general allegations about this law firm assert only that it is a "professional corporation duly incorporated in the State of Michigan[.]" To be sure, the Act can apply to law firms that engage in debt collection. *See Sheriff v. Gillie*, 136 S. Ct. 1594, 1600 (2016); *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). And some courts have held that unpaid condo dues can qualify as "debt" under the Act's definition (an issue we need not reach). *See*

*Ladick v. Van Gemert*, 146 F.3d 1205, 1206–07 (10th Cir. 1998).  But the complaint nowhere suggests that Makower's "principal purpose" is debt collection.  And it nowhere suggests that Makower "collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of . . . its general law practice."  *Schroyer*, 197 F.3d at 1176; *cf. Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61–63 (2d Cir. 2004).  Indeed, the complaint nowhere asserts any facts about Makower's general legal practice, about the types of cases it typically handles, or about the types of clients it usually serves.  *See Thomas v. US Bank Nat'l Ass'n*, 675 F. App'x 892, 898 (11th Cir. 2017).  Perhaps Makower is a debt-collection firm.  Yet the pleaded facts must be more than "'merely consistent with' a defendant's liability."  *Iqbal*, 556 U.S. at 678 (citation omitted).

Turn to Highlander.  The general allegations about this company assert that it was "hired by defendant, Green Farms, to manage the condominium project."  The complaint nowhere suggests the portion of Highlander's management (if any) that involves collecting debts.  Not only that, courts have held that managers of condominium or apartment complexes fall within exceptions to the debt-collector definition when acting as agents for the condo or apartment owners.  These courts have invoked either an exception covering entities who collect debts "incidental to a bona fide fiduciary obligation" or one covering entities who collect debts that were not in default when the entities "obtained" them.  15 U.S.C. § 1692a(6)(F)(i), (iii); *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1301–03 (11th Cir. 2012); *Carter v. AMC, LLC*, 645 F.3d 840, 843–44 (7th Cir. 2011); *Raburn v. Wiener, Weiss & Madison*, 2018 WL 2107188, at *4 (M.D. La. May 7, 2018), *aff'd sub nom.* 761 F. App'x 263 (5th Cir. 2019); *cf. Henson*, 137 S. Ct. at 1723–24.  We need not decide the scope of these exceptions in this case.  We instead hold that a complaint does not plausibly allege that an entity has a primary debt-collection purpose or that it regularly collects debts merely by alleging that it manages a condo complex.

That leaves the Bateses only with their specific factual allegations about the actions that Makower and Highlander took against them in this case.  We also need not decide whether factual allegations about *specific* conduct could ever suffice to establish a defendant's *general* activities under the Act's debt-collector definition—a proposition we have called "doubtful." *Thompson*, 2020 WL 413707, at *2.  Even if those kinds of allegations could do so, most of the

Bateses' specific allegations in this case make it fall squarely within *Obduskey*. That case arose at the pleading stage too. *See* 139 S. Ct. at 1035. And we know from its holding that a complaint does not adequately plead that a lawyer is a "debt collector" under the Act's general definition if it alleges only that a lawyer helped a lender undertake a nonjudicial foreclosure. *Id.* at 1036.

For the most part, that is all the Bateses claim. As their primary injury, they allege the loss of their condo through Michigan's foreclosure-by-advertisement process. And most of their specific allegations reiterate this injury. They repeatedly say that Makower and Highlander violated the Act by "wrongfully record[ing] a lien against [the Bateses'] real estate and foreclos[ing] on the real estate by advertisement in violation of the condominium by laws." Under *Obduskey*, these allegations cannot suffice to show that Makower and Highlander are general debt collectors. *Id.* at 1038.

The Bateses respond that their complaint alleges more than merely enforcing a security interest and so falls within *Obduskey*'s disclaimer that the Court did "not consider what *other* conduct" might make a security-interest enforcer a general debt collector. *Id.* at 1040. They identify two factual allegations to distinguish *Obduskey*. Neither does so.

The Bateses first argue that the complaint alleges that Makower and Highlander wrongfully created the security interest by recording the lien on their condo. The *creation* of a security interest, their argument goes, is different from the *enforcement* of a security interest. This argument misreads Michigan law. Michigan's Condominium Act makes clear that the "[s]ums assessed to a co-owner by [a condo] association of co-owners that are unpaid . . . constitute a lien upon the unit or units in the project owned by the co-owner at the time of the assessment[.]" Mich. Comp. Laws § 559.208(1). The lien thus arose automatically. Michigan law then says that the lien "may be foreclosed . . . by advertisement," but that "[a] foreclosure proceeding may not be commenced without recordation and service of notice of lien in accordance with" various rules. *Id.* § 559.208(1), (3). Like the notice sent to the debtor in *Obduskey*, therefore, the recording of the lien was an "antecedent step[] required under state law to enforce [the] security interest." 139 S. Ct. at 1039. "And because he who wills the ends must will the necessary means," the Act's separate definition for security-interest enforcers covers all

state-required steps to do so. *Id.* The recording of the lien thus falls squarely within *Obduskey*'s central holding.

The Bateses next argue that the complaint alleged that Makower and Highlander violated the Act (and became general debt collectors) when these "defendants" "falsely represented the character, amount or legal status of" the delinquent dues, "held the cashier's checks" that the Bateses paid, and wrongly "added charges" to their debt, all in violation of 15 U.S.C. § 1692e(2)(A). These allegations are too conclusory to show that Makower and Highlander engaged in specific actions to "collect[] or attempt[] to collect" the Bateses' debt, let alone that they generally engaged in debt-collection activities. 15 U.S.C. § 1692a(6). What was the false representation? When did it occur? Who made it? How was the holding of the checks the "collection" of a debt? Who held the checks? What were the illegal charges? Who added them? Why were they illegal? "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And these "threadbare" allegations allow us only to speculate whether Makower and Highlander are debt collectors. *Iqbal*, 556 U.S. at 678. The complaint leaves us in the dark about the basic facts that occurred during the foreclosure—even though the Bateses presumably knew all of those facts before filing this suit.

In sum, the Bateses' complaint fails to distinguish *Obduskey* and shows, at most, that Makower and Highlander were only security-interest enforcers. Because they allege violations of provisions other than § 1692f(6), they have not stated actionable claims against those defendants.

### III

Apart from the merits, the Bateses raise a procedural argument. They assert that the district court should have converted Makower's and Highlander's motions for judgment on the pleadings into motions for summary judgment because the Bateses' opposition brief attached evidence outside the pleadings (letters and an email from Makower, receipts for their dues payments, and account summaries). *See* Fed. R. Civ. P. 12(d). Because they did not have the opportunity to gather more evidence, the Bateses continue, the court should have denied this

converted summary-judgment motion as premature so that they could conduct full discovery. *See* Fed. R. Civ. P. 56(d).  Their argument misunderstands the Federal Rules of Civil Procedure.

To begin with, the argument offers a roadmap to sidestep meritorious motions for judgment on the pleadings under Rule 12(c) (or motions to dismiss under Rule 12(b)(6)): attach evidence to the opposition brief and then demand time for discovery.  Yet it is black-letter law that, with a few irrelevant exceptions, a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings.  *See Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 494 (6th Cir. 2019); *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 698 (6th Cir. 2018); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012); 5B Charles A. Wright et al., *Federal Practice and Procedure* § 1357, at 375–76 (3d ed. 2004); 5C Charles A. Wright et al., *Federal Practice and Procedure* § 1368, at 238, 242 (3d ed. 2004).  This rule applies just as much when the plaintiff attaches evidence to its opposition as when (as is more common) the defendant attaches evidence to its motion.  *Cf.* 5C Wright, *supra*, § 1366, at 150, 155–56.  "The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."  2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2], LEXIS (database updated 2020).

If plaintiffs believe that they need to supplement their complaint with additional facts to withstand a motion for judgment on the pleadings (or a motion to dismiss), they have a readily available tool: a motion to amend the complaint under Rule 15.  *See* Fed. R. Civ. P. 15(a).  Plaintiffs cannot, by contrast, amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint.  *See, e.g.*, *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014); *Heinrich*, 668 F.3d at 405.  "If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint."  *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993).  Because the Bateses did not file a motion to amend (or even request an opportunity to do so), the district court could properly disregard the new evidence.

Yes, the Bateses respond, but the district court did *not* disregard the evidence in this case. Instead, the court twice mentioned the evidence when granting the motions for judgment on the pleadings.   And Federal Rule of Civil Procedure 12(d) notes that if "matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) (emphasis added).  Given this text, we have added that even a district court's failure to *expressly* reject evidence attached to the briefs triggers its duty to treat the motion as one for summary judgment. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 502–04 (6th Cir. 2006).  The Bateses thus correctly note that the district court could not both consider the outside evidence and treat the motions as motions for judgment on the pleadings.  A district court also must notify the parties that it plans to convert a motion and give them "a reasonable opportunity to present all the [pertinent] material." Fed. R. Civ. P. 12(d).

But this invited error does the Bateses no good.  We have recognized that an error like this one can be harmless in two circumstances, depending on how a court has ultimately used the outside evidence. *See Max Arnold*, 452 F.3d at 504; *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).  Consider first a case in which the district court's ruling on the motion depended on that outside evidence.  In that context, we have held that the failure to notify the parties and give them an opportunity to present more evidence "is not reversible error" if that failure did not prejudice the parties because they "had a sufficient opportunity to present pertinent materials." *Max Arnold*, 452 F.3d at 504.  On appeal, we have reviewed a district court's decision that makes this type of error under the standards governing a motion for summary judgment. *Id.*

Consider next a case in which the district court merely described the evidence in passing (or failed to expressly reject it).  In that context, we have held that the failure to convert the motion to a motion for summary judgment is not reversible error if the court's "rationale" in no way "hinged on the additional information provided there." *Yeary*, 107 F.3d at 445; *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993).  That is, this "error will be treated as harmless if the dismissal can be justified without reference to any extraneous matters." 5C Wright, *supra*, § 1364, at 63 (3d ed. Supp. 2019).  On appeal, we have reviewed a district court's decision that

makes this type of error under the normal standards governing a motion to dismiss or for judgment on the pleadings.  *See Yeary*, 107 F.3d at 445; *see also Yaldo*, 622 F. App'x at 516.

We find the second course to be the proper path here.  The district court did not use the Bateses' evidence to find their complaint's factual allegations inadequate.  As we have explained, their complaint was inadequate "without reference to any extraneous matters." 5C Wright, *supra*, § 1364, at 63 (3d ed. Supp. 2019).  Instead, the court simply cited this evidence when explaining to the Bateses why the evidence did not change things.  The Bateses, for example, attempted to distinguish *Obduskey* with outside-the-pleadings correspondence from Makower, which showed that the law firm inserted language in its letters explaining that it was "a debt collector attempting to collect a debt."  Under the rules, the court should have expressly disregarded this factual allegation about the contents of Makower's letters because the Bateses did not make the allegation anywhere in their complaint.  But we see no reversible error in the court merely explaining to the Bateses that the "inclusion of" language like this is "legally irrelevant" under our caselaw.  *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 432 (6th Cir. 2015) (quoting *Maynard v. Cannon*, 401 F. App'x 389, 395 (10th Cir. 2010)); *cf. Obduskey*, 139 S. Ct. at 1035.  Lastly, the Bateses' opposition brief never asked the district court to treat the motions as motions for summary judgment.  So we fail to see why they should be able to raise this issue "for the first time on appeal."  *Song*, 985 F.2d at 842.

We affirm.