NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0215n.06

No. 22-3512

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 05, 2023
DEBORAH S. HUNT, Clerk

L.O.I. PROPERTY, LLC, B.A.O. PRODUCTIONS
LLC, and BRETT OAKLEY,

     Plaintiff-Appellants

     v.

BUTLER COUNTY, OHIO, BUTLER COUNTY
BOARD OF COMMISSIONERS, and PETER
ACUFF,

     Defendant-Appellees

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

OPINION

Before: KETHLEDGE, WHITE and STRANCH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  In this case arising from Butler County's rejection

of a preliminary Business Planned Unit Development (B-PUD), Plaintiff-Appellants L.O.I.

Property, LLC, B.A.O. Productions, LLC, and Brett Oakley (Plaintiffs) appeal the grant of

judgment on the pleadings dismissing their complaint alleging due process and equal protection

violations.  Because Plaintiffs have not stated a cognizable property interest or plausibly pleaded

that Defendants acted out of animus or ill will, we AFFIRM.

**I.**

Land of Illusion Adventure Park (LOI) is a regional family entertainment venue that

provides seasonal attractions in Madison Township, Butler County, Ohio.  LOI has been owned

and operated by Plaintiff Brett Oakley since its founding in 2005.[1]  Oakley owns several parcels

---

[1] This is not the first time Oakley has butted heads with the Butler County.  From 1997 to
2004, Oakley hosted the Middletown Haunted Trails—a Halloween fundraiser for Madison
Township's Fire Department—out of his home.  Plaintiffs allege that Butler County shut down the

of property at 8762 Thomas Road and LOI currently operates on the largest of those parcels, which is zoned for general business use. The original zoning was secured through Butler County in 2005. As LOI has expanded between 2005 and the present,[2] Oakley has sought a number of variances and conditional use permits to alter and enhance the park. For example, Oakley sought variances and conditional use permits to operate a paintball facility and to alter the signage at the entrance to LOI. Plaintiffs allege that these variance and conditional-use requests were largely approved by Butler County. In 2015, Oakley sought a zoning change for two parcels abutting the current LOI site, but ultimately withdrew his application before it was considered.

In 2020, Oakley sought a zoning change for a B-PUD, which would have affected all 228 acres of his property at 8762 Thomas Road. Plaintiffs allege that Oakley chose this route because the Butler County Planning Administrator, Defendant Peter Acuff, and other members of the Butler County Department of Development, advised Oakley to seek a comprehensive re-zoning for all his parcels, rather than piecemeal zoning changes for each parcel. Oakley's preliminary B-PUD application included "a plan for a campground, a themed hotel, an indoor water park, a family entertainment center, an expansion of the existing outdoor water park, and an amusement park." R.1, PID 14.

Butler County's zoning process involves a multi-level review for preliminary B-PUDs. First, an applicant submits a preliminary B-PUD plan to the planning staff of the Butler County Department of Development. Once the application is deemed complete by the Department of

---

Middletown Haunted Trails in 2004. As a result, Oakley purchased a salvage yard on Thomas Road in Madison Township, which he converted into the permanent site for LOI.

[2] Since 2005, LOI has expanded to include seven haunted attractions that operate from September to October; a water park, which operates from late spring to late summer; and Christmas attractions during the holiday season.

Development, the application is considered by the Butler County Planning Commission. Then it is considered by the Butler County Rural Zoning Commission. Each of the commissions makes an independent recommendation on the plan. Finally, the preliminary B-PUD plan and zoning-change application are considered by the Butler County Board of County Commissioners, who review the applications alongside the recommendations of the Planning Commission and the Rural Zoning Commission. The Board of County Commissioners' review is set forth in the Butler County Rural Zoning Resolution. The Rural Zoning Resolution requires that Upon receipt of the report of the County Rural Zoning Commission, the Board of County Commissioners shall study and review the proposed PUD application and Preliminary PUD Plan to (1) see that all requirements have been satisfied, and (2) ascertain that the following specific conditions are fully met:

- That the PUD District is in conformance with the Land Use Plan for Butler County

- That the total density . . . for the development does not exceed the maximum density . . . allowed for the [PUD] as a whole

- That the use(s) proposed will not be detrimental to present and potential surrounding uses but will have a beneficial effect which could not be achieved under other zoning districts.

- That the use(s) proposed shall be used only for those uses permitted under these provisions and the usual accessory uses

- That the internal streets and primary and secondary roads that are proposed shall properly interconnect with the surrounding existing primary and secondary road network . . .

- That the minimum common open space area(s) has been designated and shall be duly transferred to a legally established Homeowner's Association, commercial management group or they have been dedicated to Butler County . . .

- That the Preliminary PUD Plan is consistent with the intent and purpose of this Resolution: to promote public health, safety and general welfare of the residents of Butler County, Ohio.

*Id.* at PID 9 (quoting Butler Cty., Ohio, Rural Zoning Resol. § 13.04, *et seq.*)

Once the preliminary B-PUD plan is approved, the landowner still must return to the Board of County Commissioners to seek final B-PUD plan approval. Plaintiffs allege that "specific and detailed engineering plans" are required only during that final review period.

Plaintiffs allege that when Oakley submitted the preliminary B-PUD application to the planning staff of the Butler County Department of Development, the staff recommended preliminary approval. Plaintiffs also allege that the Butler County Planning Commission unanimously recommended approval. The Butler County Rural Zoning Commission, however, unanimously recommended denial. Following the Rural Zoning Commission's recommendation, Oakley withdrew the B-PUD application to amend it to include comments and suggestions he had received from the planning staff of the Butler County Department of Development.

Oakley submitted an amended, second preliminary B-PUD application to Butler County in September 2020. That application included several major changes from the initial application. Notably, the amended application "entirely removed the proposed amusement park from the B-PUD plan" and added an enlarged greenspace buffer between local residents and the proposed LOI expansion. *Id.* at PID 14.

But when Oakley submitted the amended B-PUD plan to the planning staff of the Butler County Department of Development, the planning staff "changed their recommendation from approval . . . to suddenly recommending denial." *Id.* at PID 15. The amended application was similarly rejected by the Butler County Planning Commission as well as the Butler County Rural Zoning Commission. Plaintiffs allege that the planning staff, the Planning Commission and the Rural Zoning Commission did not provide reasoning for their recommendations of denial.

Both the Butler County Planning Commission and the Butler County Rural Zoning Commission issued resolutions recommending denial of the preliminary B-PUD. The Planning

Commission explained that "the amendment is not generally consistent with the Comprehensive Plan for Butler County." R.17-1, PID 131. Similarly, the Rural Zoning Commission explained that "the requested zone change . . . is not consistent with the adopted Future Land Use Plan." *Id.* at 132. The Butler County Planning Commission also issued a Zone Change Staff Report, which made additional findings. The Planning Commission explained that the "zone change application and preliminary PUD plan are ambitious and broad in both physical and temporal scope. The impacts of this proposed development on the surrounding area and Madison Township as a whole will be significant." *Id.* at 130. The Planning Commission concluded that "[m]any questions remain to be resolved around this project," and that "resubmittal of the application is premature without addressing the pertinent public health and safety concerns." *Id.*[3]

Still, Oakley presented the B-PUD application to the Butler County Board of County Commissioners during a public hearing on November 30, 2020. Plaintiffs allege that during that hearing Oakley "provided significant evidence to show that the application complied with the [approval] conditions of the preliminary PUD plan" and provided testimony "from the area chamber of commerce, the county's visitors' bureau" and others in support of the application. R.1

---

[3] Defendants appended several public records to their motion for judgment on the pleadings, including the resolutions passed by the relevant Butler County bodies as well as the staff report prepared by the Butler County Planning Commission. The district court considered these documents and explained that "[t]he Court may consider public records that are referenced in or central to the allegations in a complaint without converting a Rule 12 motion into a Rule 56 motion." R.36, PID 854, n.1 (citing *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)). Because the Commissions' and Commissioners' reasoning is central to the allegation that their decision making was arbitrary, we agree that these documents can be considered on appeal. *Rondigo*, 641 F.3d at 681 ("[A] court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment." (quoting *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

at PID 15. Despite the presentation, the "two Butler County Commissioners present for the hearing voted to deny the zone-change application." *Id.*

The Board of County Commissioners made eight findings of fact to support their denial:

1.      The requested zoning map amendment to B-PUD for Land of Illusion (RZC 20-03) does not conform to the adopted Madison Township Proposed Land Use Plan's recommendation of residential or agricultural use for the subject site.

2.      Analysis of Madison Township's development over the last 10-20 years shows very little change in the character of the Township, suggesting that the Land Use Plan adopted in 2001 is still relevant and applicable:

   a) Since 2000, the Township's population has only increased by 2%, from 8,611 to 8,772 persons[.]

   b) Over the last ten years, there has only been an average of 5.8 new homes built annually, comprising 1.4% of residential permits issued countywide[.]

   c) A Department of Development planning study conducted in 2019 shows that land uses have remained stable over the past two decades, with only minor fluctuations in the percentage of land dedicated to agricultural, residential, recreational, commercial, and industrial uses.

   d) Since 2004, the County has considered ten zone change requests in Madison Township, only five of which were approved (two cases in 2004 and one case each in 2005, 2011, and 2019). Two prior zone change requests for the subject site (in 2015 and 2020) were withdrawn by the applicant.

3.      The high intensity commercial recreation uses proposed in the Preliminary Development Plan (PDP) are likely to adversely impact the existing land uses and have detrimental effects on the surrounding rural residential development, particularly with respect to development density and intensity, quality of life and enjoyment of property as zoned, and/or other public health, safety and general welfare elements, including but not limited to noise, traffic, sanitary wastewater treatment, storm water runoff, and demand for local emergency services.

4.      The PDP does not adequately address the aforementioned adverse impacts or detrimental effects or adjoining property owners' voiced concerns during the public hearings process.

5.      The PDP does not integrate or demonstrate protections to and for the public health, safety, and general welfare of the residents of Madison Township and Butler County, Ohio.

6.      Relevant state and local agencies (Ohio EPA, Butler County General Health District, Butler Soil and Water Conservation District) have questioned the ability

of the proposed project as illustrated in the PDP to provide public services in an effective manner.

7. The existing zoning districts on the subject site currently allow a broad range of uses, including production agriculture, residential development, and general business or institutional uses.

8. The Madison Township Trustees have expressed their opposition to the requested zoning map amendment.

R.17-1, PID 134-35.

After making these findings, the Board of County Commissioners stated that it concurred with the recommendations of the Planning and Rural Zoning Commissions and "denies the zoning map amendment request for . . . Land of Illusion based on the complete record submitted and established during the public hearing process and the aforementioned findings of fact." *Id.* In doing so, the County Commissioners made three additional determinations. First, that the "request is inconsistent with the adopted Madison Township Proposed Land Use Plan designation." *Id.* Second, that "the Preliminary Development Plan and proposed development intensity and density and schedule do not promote the public health, safety, and general welfare of the adjoining property owners, residents of Madison Township, or the citizens of Butler County." *Id.* And third, that "based on [] development patterns and population growth . . . it has not been demonstrated there is a need for business zoning at the expense of the adjoining existing land uses." *Id.*

After the denial, Plaintiffs sued Butler County, the Board of County Commissioners, Acuff, Madison Township and the Madison Township Board of Township Trustees. They alleged violations of the due process clauses of the Fifth and Fourteenth Amendments—specifically, that "L.O.I. Property and Mr. Oakley possess the right to receive a zone change for a business planned unit development when satisfying the preliminary PUD plan conditions of the Rural Zoning Resolution," and that the Defendants' recommendation that Oakley submit a B-PUD, as well as their "failure to properly and dutifully consider" the preliminary PUD application, violated their

-7-

due process rights. R.1, PID 18. Plaintiffs also alleged equal protection violations under the United States Constitution as well as similar violations under the Ohio Constitution.

Defendants filed an answer and motion for judgment on the pleadings. Defendants appended several public records to the motion, including the resolutions of the Butler County Planning Commission, Butler County Rural Zoning Commission and Butler County Board of County Commissioners. A magistrate judge issued a report and recommendation, recommending that the district court grant Defendants' motion for judgment on the pleadings. Specifically, the magistrate judge found that Plaintiffs' due process claims failed to allege a cognizable property interest and that their equal protection claim failed to allege that their zoning application was similarly situated to other re-zoning applications or that Defendants had acted with ill will or animus. The district court agreed and dismissed the case. Plaintiffs timely appealed.

**II.**

Plaintiffs raise three issues on appeal: whether they failed to state a claim that Defendants violated Plaintiffs' rights to substantive and procedural due process; whether Plaintiffs failed to state an equal protection claim; and whether public policy considerations warrant "a more flexible application of local zoning regulations." Appellants Br. at 2. Because Plaintiffs' public policy arguments are not properly before this court, we review only their due process and equal protection arguments.[4]

---

[4] As Defendants point out, Plaintiffs did not raise these public policy arguments before the district court. *See* Appellee Br. at 40; *see also* R.25, R.35. Further, it is unclear how we would apply these public policy considerations in the face of Sixth Circuit and Supreme Court precedent requiring that a plaintiff demonstrate a cognizable liberty or property interest to recover on a due process claim. *See e.g. Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (explaining that in the re-zoning context, "[i]n order to have a property interest in a benefit, a person must have more than a desire for it or unilateral expectation of it; rather, he must have a 'legitimate claim of entitlement to it.'" quoting *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005)).

A judgment on the pleadings granted under Rule 12(c) is reviewed de novo, "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Moore v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021). So "[c]ourts must accept as true all well-pleaded factual allegations, but they need not accept legal conclusions." *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). Those "well-pleaded factual allegations must 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2007)). "Thus, '[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Barber v. Charter Twp. of Southfield, Michigan*, 31 F.4th 382, 386 (6th Cir. 2022) (quoting *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). Although our review "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

## A. <u>Procedural and Substantive Due Process Claims</u>

Plaintiffs argue that Defendants denied them procedural and substantive due process under the Fifth and Fourteenth Amendments. The district court reviewed these claims together. The due process clause has both a procedural and a substantive component; procedural due process is concerned with whether "the government provide[d] a 'fair procedure' when depriving someone of life, liberty, or property," and "substantive due process 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Under either theory, a plaintiff must show that he had a constitutionally protected liberty or property interest. *Id.* (noting that a plaintiff must show that

"he had a life, liberty, or property interest protected by the Due Process Clause" to prove a procedural due process violation, and that a plaintiff must show that "a constitutionally protected property or liberty interest exists" to recover on a substantive due process theory (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir.), *cert. denied*, 555 U.S. 1062 (2008)).

Plaintiffs argue that they had a protectible property interest in the re-zoning of their property based on the preliminary B-PUD application that was submitted to the Butler County officials. The district court acknowledged that although "a property owner arguably has a property right where the government *rezones* an existing property," R.36, PID 858 (quoting *Braun*, 519 F.3d at 573), and "[c]itizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions," *id.* (quoting *Tollbrook, LLC v. City of Troy*, 774 F. App'x 929, 933 (6th Cir. 2019)), the creation of a protectible property interest requires "more than a desire for it or unilateral expectation of it" and instead requires "a legitimate claim of entitlement to it—in this case, a legitimate claim or an entitlement to rezoning," *id.* (quoting *Braun*, 519 F.3d at 933). Accordingly, when the government's "decision to award or withhold [a] benefit is wholly discretionary" a plaintiff cannot "possess a property interest in the receipt" of that discretionary benefit. *Id.* (quoting *EJS Props.*, 698 F.3d at 846). The district court found that several criteria in the Rural Zoning Resolution were "inherently subjective" and, therefore, conferred discretion on the Butler County Commissioners in their review of the preliminary B-PUD application. *Id.* at 860. The district court found that because "approval was not mandatory even if the conditions were satisfied," Plaintiffs had not alleged "a legitimate claim to entitlement of approval of their BPUD application" and therefore, could not allege a protectible property interest as necessary for their procedural and substantive due process claims. *Id.* at 861.

Plaintiffs argue that the district court erred in finding that the Rural Zoning Resolution provided the Butler County Commissioners with discretion to deny the preliminary B-PUD application. Specifically, they argue that a review of the Rural Zoning Resolution reveals that the Commissioners' "discretion with respect to the approval of a preliminary PUD plan is limited." Appellants Br. 16. They focus on language in the resolution providing:

> Approval of the Preliminary PUD Plan shall be limited to the general acceptability of the land uses proposed, proposed general density levels and their inter-relationship, and shall not be construed to endorse precise location of uses, configuration of parcels or engineering feasibility which are to be determined in the subsequent preparation of the detailed Site Development Plan(s).

R.25-1, PID 411-12. But this ignores other requirements of the Rural Zoning Resolution. To start, that same section of the resolution grants the Commissioners authority to deny the Preliminary PUD Plan if certain subjective criteria are not met. As the district court explained, the conditions for approval of a preliminary PUD plan involve inherently subjective determinations by the Commissioners. Section 13.048 of the Rural Zoning Resolution requires the Commissioners to determine that "the Preliminary PUD Plan is consistent with the intent and purpose of this Resolution: to promote public health, safety and general welfare of the residents of Butler County, Ohio." *Id.* at 411. Similarly, Section 13.044 requires the Commissioners to determine that "the use(s) proposed will not be detrimental to present and potential surrounding uses but will have a beneficial effect which could not be achieved under other zoning districts." *Id.* Both sections require the Commissioners to make subjective evaluations, necessarily vesting them with discretionary, rather than mandatory, authority to grant the preliminary PUD plan.

Plaintiffs point us to *Ritz v. City of Findlay*, No. 3:07-cv-3716, 2009 WL 1954635 (N.D. Ohio July 6, 2009), an unpublished district court case, to suggest that the Rural Zoning Resolution confers only limited discretion on the Commissioners. Plaintiffs acknowledge that, as "an

unpublished [district court] opinion" *Ritz* is not "precedential authority to this Court," but argue

that it is nonetheless persuasive authority. Appellants Br. at 15. Specifically, they argue that in

*Ritz*, the zoning resolution at issue used the word "'shall,' [which] together with the exhaustive list

of factors" to be considered when reviewing a site plan "created a mandate that required

conforming applications to be approved." *Id*. at 15 (quoting *Ritz*, 2009 WL 1954635, at *15). *Ritz*

is distinguishable from this case.

> In *Ritz*, Findlay city ordinances required the Planning Committee to consider:
>
> (1) The location and design of driveways providing vehicular ingress to and egress from the site, in relation to streets giving access to the site, and in relation to pedestrian traffic.
> (2) The traffic circulation features within the site and location of automobile parking areas; and may make such requirements with respect to any matters as will assure:
>> (A) Safety and convenience of both vehicular and pedestrian traffic both within the site and in relation to access streets.
>> (B) Satisfactory and harmonious relationships between the development on the site and the existing and prospective development of contiguous land and adjacent neighborhoods.
> (3) The proposed method of surface drainage control, including the methods for stormwater retention and erosion prevention.

*Ritz*, 2009 WL 1954635 at *2, n.1. And "once the Commission considers these matters, it has the

authority to approve, approve with conditions, or 'if appropriate, reject the site plan submission *if*

*it is noncomforming*.'" *Id.* (emphasis added).

The Rural Zoning Resolution does not impose comparable restrictions on the

Commissioners. Instead, Section 13.051 instructs that "[i]f from the facts presented, the Board of

County Commissioners is unable to make the necessary findings, the application shall be denied."

R.25-1, PID 411-412. And the Rural Zoning Resolution requires the Commissioners to make

inherently subjective determinations, e.g. that "the Preliminary PUD Plan is consistent with the

intent and purpose of this Resolution: to promote public health, safety and general welfare of the

residents of Butler County, Ohio," *id.* at 411 (Section 13.048), and that "the use(s) proposed will not be detrimental to present and potential surrounding uses but will have a beneficial effect which could not be achieved under other zoning districts," *id.* (Section 13.044). Thus, *Ritz* is inapposite here.

Even if Plaintiffs have a protectible property interest, they still cannot prevail on their procedural or substantive due process claims. Plaintiffs argue that Defendants' denial of the preliminary B-PUD application was arbitrary and capricious. This is not supported by the limited record. The record shows that, before denying Plaintiffs' preliminary B-PUD application, the Butler County Board of County Commissioners heard testimony from Oakley's "planner and his attorney" as well as from the "chamber of commerce, the county's visitors' bureau, the school district's superintendent, the Ohio State Representative . . . and numerous business owners." R.1, PID 15. And the resolution of the County Commissioners explains that other groups, including the "Ohio EPA, Butler County General Health District, Butler Soil and Water Conservation District" as well as the "Madison Township Trustees" expressed their concerns regarding the preliminary B-PUD application. R.17-1, PID 135. Further, a review of the record shows that the Butler County Commissioners reviewed the application under the appropriate standards set out in the Rural Zoning Resolution, which requires that "the Preliminary PUD Plan is consistent with the intent and purpose of this Resolution: to promote public health, safety and general welfare of the residents of Butler County, Ohio" and that "the use(s) proposed will not be detrimental to present and potential surrounding uses but will have a beneficial effect which could not be achieved under other zoning districts." R.25-1, PID 411. In denying the application, the County Commissioners made independent findings of fact that "the PDP does not integrate or demonstrate protections to and for the public health, safety and general welfare of the residents of Madison Township and

Butler County, Ohio" and that the "PDP does not adequately address . . . adverse impacts or detrimental effects or [the] adjoining property owners' voiced concerns during the public hearings process." R.17-1, PID 135.

With respect to Plaintiffs' procedural due process claims, it is not clear from their briefing what kind of additional procedures they contend would be required before Defendants could deny the B-PUD. The denial was preceded by three rounds of review by the Planning Commission, the Rural Zoning Commission and the County Commissioners. And Plaintiffs do not dispute that they received a hearing before the County Commissioners and were provided the opportunity to present testimony before the County Commissioners. Plaintiffs seem to argue that the reasoning of the Board provided "only pretextual explanation as to why [the County's] support disappeared." Appellant Br. at 19. But as discussed above, this is not supported by the record.

Plaintiffs' substantive due process claim fares no better. To establish a violation of substantive due process, "a plaintiff must show that the state administrative agency has been guilty of 'arbitrary and capricious action' in the *strict* sense." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992) (quoting *Stevens v. Hunt*, 646 F.2d 1168, 1170 (6th Cir. 1981)). This means that Plaintiffs "must show 'that there is no rational basis'" for the county's decision. *Johnson v. Morales*, 946 F.3d 911, 937 (6th Cir. 2020) (quoting *Pearson*, 961 F.2d at 1221)). In *Pearson*, this court explained "at length the various contexts in which courts have found that substantive due process is violated—including that the action was 'willful and unreasoning,' 'shocks the conscience,' was 'extreme[ly] irrational[],' or lacks 'some factual basis.'" *Id.* at 937, n.4 (quoting *Pearson*, 961 F.2d at 1221-22.) The Commissioners' action here does not reach that searching standard.

B. **Equal Protection Claims**

Plaintiffs also argue that the denial of their preliminary B-PUD application constituted a violation of their Fourteenth Amendment right to equal protection under the law. Because Plaintiffs proceed on a "class of one" equal protection claim, they can only prevail if they can prove that "the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005). A plaintiff "may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Id.* at 711 (quoting *Klimik v. Kent Cnty. Sheriff's Dep't*, 91 F. App'x 396, 400 (6th Cir. 2004)).

Plaintiffs have not attempted to negate "every conceivable [rational] basis" for the denial of their B-PUD and instead argue that the denial was "motivated by animus or ill-will." *Id.* As evidence of animus or ill will, Plaintiffs point to their allegations that Butler County shut down the Middletown Haunted Trails event in 2004 and that Peter Acuff initially suggested that they submit a B-PUD plan, rather than proceed with piecemeal re-zoning requests.

Although in reviewing a motion under Rule 12(c), we "must accept as true all well-pleaded factual allegations," we "need not accept legal conclusions." *Bates*, 958 F.3d at 480. And Plaintiffs still must plead factual allegations that "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678. As pleaded, the complaint does not give rise to a plausible inference of animus or ill will against Plaintiffs by Defendants. Plaintiffs admit in their complaint that when they purchased "an old salvage yard in 2004 on Thomas Road to expand the Halloween haunt" that decision was motivated in part by the intent to provide a "more permanent and safer

environment." R.1, PID 6. And Plaintiffs also allege that, "[f]rom 2005 to 2020, Mr. Oakley sought a number of variances and conditional-use permits for the Property" and "[f]or the most part, the Butler County Defendants approved those requests." *Id.* at PID 13. That Butler County approved variance requests between 2005 and 2020 without issue seriously undermines the plausibility that the denial of Plaintiffs' preliminary B-PUD application was motivated by animus against Plaintiffs. Plaintiffs' response that the haunted trail was shut down in 2004 and that Acuff made the seemingly neutral suggestion that Oakley proceed with an omnibus rezoning, rather than through piecemeal applications, is not sufficient to establish animus or ill will. *Cf. Loesel v. City of Frankenmuth*, 692 F.3d 452, 466 (6th Cir. 2012) (explaining that "[a]nimus is defined as 'ill will, antagonism, or hostility usually controlled but deep-seated and sometimes virulent" and "ill will is defined as an 'unfriendly feeling: animosity, hostility" and that "[t]hese definitions indicate that a showing of animus or ill will . . . requires more than simply failing to invite [plaintiffs] to a meeting.") Accordingly, the district court did not err in dismissing this claim as well.

We AFFIRM.